Samuels, J.
We are met at the threshold of this ease by the objection that the questions involved therein have been adjudged by the Circuit court of Augusta county in the case of Kerr v. Kinney, &c. and that the-decree therein remains in force, not having been superseded or reversed on appeal, nor set aside by the Circuit court itself. The record in the case of Kerr v. Kinney, Sfc. is made part of this record; and upon inspection of the bills in the cases respectively, it appears at once that they are founded, in a great degree,, on different facts, and seek different relief. The bill in Kerr, &c. v. Kinney, &c. is based upon the hypothesis that the deed, exhibit D, the chief subject of controversy:, *53 is a valid security, and prays relief by having the debts and liabilities secured by that and other deeds ascertained and enforced. The trustee, who is a party plaintiff, prays the judgment of the court on the validity of so much of the deed D as excludes from its benefits such of the cesiuis que trust as should sue out process of execution against the person or property of Ken- the grantor before the trusts were fully executed. In the case before us, Quarles, &c. v. Kerr, &c. the bill is founded upon the alleged fact that the deed D is fraudulent; and prays relief by having it set aside so far as it interfered with the judgment and execution for complainant’s debt. Facts so widely different required different decrees. It cannot be said that the facts and relief appropriate to them in the case before us, have been passed on, when the Circuit court passed on the facts and relief in the other case:
The Circuit court in Kerr, &c. v. Kinney, &c. could not have set aside the deed D, for fraud, as it was not alleged in that case; so that court could not acquit Kerr of fraud in making the deed, in advance of the charge of fraud.
Waiving any enquiry as to the mode and form of the plea, still the decree of the Circuit court is no bar, for the further reason, that it is merely interlocutory and not final. Story’s Equ. PL § 791, 2 Daniel’s Ch. Pr. p. 756.
The case before us grows out of a conflict between the general dominion of Kerr the grantor over his property, and the limited dominion of Quarles, &c. over the same property, acquired by judgment and process of execution. The question to be decided is, Under which of these conflicting claims the property shall be held liable?
It will aid us in the investigation of our case, to trace the outlines of the dominion held by the owner, and that held by his creditors, over the owner’s pro *54 perty, so far as they are involved in this case. The owner, if he have no creditors, has power to dispose of his property in any way whatever. If, however, he has creditors, his power is subject to the qualification that it be not exercised so as to delay, hinder or defraud creditors. Stat. 13 Eliz. eh. 5; 1 Rev. Code, ch. 101, § 2, p. 372.
Many cases are to be found in the reports of the English courts, and of the states in which the statute 13 Eliz. ch. 5, has been adopted. Whilst all these courts have endeavored to give effect to the statute, it is still manifest that there is an irreconcilable conflict in their decisions. An act, or combination of acts, done in one jurisdiction, might have the effect to hinder, delay or defraud creditors, although if done in another jurisdiction, no such effect would follow: and this, because of a difference in the laws for the collection of debts in the several jurisdictions.
In Virginia, our courts have gone as far, or farther, than any other, to sustain the owner’s dominion ; and enough may be found in the decisions of this court to indicate the proper rule in this case.
The owner may in good faith convey his property, or a part of it, to secure the payment of his debts, or some of them, or some part or parts of them. He may designate the beneficiaries by name, or in any mode by which their identity may be ascertained. He may postpone for a reasonable time (to be judged of in each case) the period for executing the provisions of the conveyance; and he may prescribe the order in which the creditors are to be paid.
The owner cannot divide his property into two parcels, and protect himself in the enjoyment of the one by giving up the other ; he cannot require his creditors to accept part and release for the residue. He may, however, surrender all his property to such creditors as will receive it in satisfaction of their debts, and *55 release the owner. Skipwith’s ex’or v. Cunningham, 8 Leigh 271; Phippen v. Durham, 8 Gratt. 457. The reason for the distinction between a partial and a total surrender, grows out of the statute which forbids only fraudulent conveyances of present property, but is silent as to property to be acquired in future. See Thomas v. Jenks, 5 Rawles’ R. 221; 1 American Leading Cases 69.
The owner can reserve no benefit to himself, at the expense of his creditors. In case he shall postpone for a definite time, the final consummation of the security he creates, and shall either expressly, or by operation of law, reserve to himself the use of the property during that time, he is not regarded as delaying or hindering Ms creditors, within the meaning of the law, because the interest so reserved is liable to creditors acquiring liens by judgments or executions. Nor is it material that a creditor may be compelled to resort to a court of equity for aid to subject the reserved interest. Cochran v. Paris, 11 Gratt. 348; Dance v. Seaman et als. 11 Gratt. 778. The authority of courts of equity when in session, and of the judges thereof in vacation, is ample by injunction and by appointment of receivers with adequate powers, to preserve the rights of creditors having liens. The difference in the degrees of promptitude with which common law process and equitable process respectively afford relief, is not to be regarded as such delay as brings a case within the statute.
The value of property as the means of paying debts, is made up of several elements; to wit, the nature, amount and certainty of the subject itself, and the time at which it may be made available. In the case before us, the property of the grantor Kerr is divided into parcels; that embraced by the deed D, and that omitted therefrom. It was said in the argument here, that the deed D includes all Kerr’s property, as well *56 that specifically and minutely described, as that contained in the subsequent deed of the date November 10th, 1846. This I hold is not the proper construction of the deed D. The minute specification of numerous articles of small separate values, shows that it was intended to name every piece of property; and that the terms “ all the personal property,” &c. were not intended to embrace thestock of merchandise worth thousands of dollars. This is the cotemporaneous construction of the deed by Kerr the grantor, by Trout the trustee, and by the cestuis que trust, the creditors. Eleven days after the execution of that deed, another deed dated November 10th, 1846, was executed by the same grantor, conveying the stock of merchandise to the same trustee, in part for the benefit of some of the same cestuis que trust. These deeds have been treated and enforced as separate and independent securities, without opposition or complaint from any party ; and it cannot be insisted, now for the first time, in this court, that the deed of November 10th, 1846, is subordinate to the deed D. It is therefore manifest, as already said, that Kerr divided his property into two parcels ; one embraced, the other omitted, in the deed D. The parcel embraced by the deed is vaguely and uncertainly subdivided as to the time when it may be made available by creditors: two years are named as the period for consummating the trust, but this period may be shortened at Kerr’s pleasure; or it may be prolonged by the difficult, if not impracticable, process of executing the trust. Kerr wras to retain the property until a sale should be made under the deed. This reserved interest and Kerr’s equity of redemption were liable to creditors not claiming under the deed ; and thus, so far as time entered into the value of the security, the omitted creditors were at Kerr’s mercy. If the reserved interest should be separately sold, it would produce but little, because of its uncertain du *57 ration ; or if the whole subject be sold, out and out, still the difficulty recurs in apportioning the proceeds: the omitted creditors, to the extent of their demands, would have title to the avails of the reserved interest; the favored creditors, to the extent of their demands, would have title to all other avails of the property. After they should be satisfied, the residue, if any, representing the equity of redemption, would be applied to the debts of the omitted creditors, if not satisfied by the avails of the reserved interest. It would be impracticable to make an apportionment between parties whose claims are so uncertain.
The division made by Kerr the grantor in the deed D, between the interest reserved to himself and that granted for the benefit of the cestuis que trust, is uncertain, for another reason: the reserved interest was to continue until the trust was consummated; this could not be done until the expiration of two years, unless directed by Kerr; nor after, unless by his direction, or by direction in writing by creditors holding what is called a majority in amount of debts. The amounts of the debts are vaguely stated. The trustee has power, after a sale, to adjust the amounts; but he has no power to fix the amounts preliminarily to making a sale at all. The face of the deed shows that the creditors reside at different places, widely separated, and thus a suit in chancery would be indispensable to ascertain who might direct a sale; whilst such a proceeding, of uncertain duration, should be pending, the grantor was to enjoy the property.
The deed D omits the grantor’s stock of merchandise, which is shown to be of great value. It seeks to impose on his creditors secured in the deed, the alternatives of looking to the deed only for security, and giving up for an indefinite time the right to pursue the debtor’s other property by legal process, or of for- *58 felting any claim under the deed. This is a palpable attempt to use one portion of the debtor’s present property to protect another portion from his creditors. We have seen that this cannot be done when the protection sought is for all time; and the principle is the same when it is sought for a limited time; the difference is in degree only. The hindrance or delay of creditors is reprobated by the statute without regard to the duration of the hindrance or delay. Under the circumstances of this case, a delay of two years in the pursuit of Kerr’s property, was equivalent to giving up all claim upon it.
If any thing more were needed to condemn the deed D as fraudulent, it would, in my judgment, be found in the fact that it was executed on the last juridical day preceding the commencement of the term at which the appellants obtained their judgment; and in the fact that it embraces large quantities of property consumable in the use, and which must be used within the two years, to be of any value. It was merely illusory as a security for debts to be paid two years or more thereafter. I am aware of the cases in this court, in which conveyances of property of like nature have been held good. Recognizing the binding authority of those cases, as establishing that such conveyances of such property are not necessarily fraudulent and void, still I am of opinion that this1 court has not, and could not in advance declare that no weight as evidence shall be allowed in any case to the fact, that the conveyance is illusory for the purpose of securing debts.
I am of opinion to reverse the decree of the Circuit court, and to render a decree subjecting the avails of property, embraced by the deed D, now under the control of the court, to the satisfaction of the appellants’ judgment; and applying the residue thereof, if any, to the trusts declared by that deed.
*59 Daniel and Moncure, Js. concurred in the opinion of Samuels, J.
Allen, P. dissented.
•Decree reversed.