

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-1994

# United States of America v. McDade

Precedential or Non-Precedential:

Docket 93-1487

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States of America v. McDade" (1994). *1994 Decisions.* Paper 46.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/46

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 93-1487
_____

UNITED STATES OF AMERICA

v.

JOSEPH M. McDADE,
Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal No. 92-00249-01)
_____

Argued:  December 2, 1993
Before:  SCIRICA and ALITO, <u>Circuit Judges</u>,
and BASSLER, <u>District Judge</u>*

(Opinion Filed: June 15, l994  )

_____

G. ROBERT BLAKEY (Argued)
Notre Dame Law School
Notre Dame, IN 46556

SAL COGNETTI, JR.
FOLEY, COGNETTI & CORMERFORD
507 Linden Street, 7th Floor
Scranton, PA 18503

JAMES D. CRAWFORD
SCHNADER, HARRISON, SEGAL & LEWIS
1600 Market Street, Suite 3600
Philadelphia, PA 19103

<u>Attorneys for Appellant, Joseph M. McDade</u>

_____

*Hon. William G. Bassler, United States District Judge for the
District of New Jersey, sitting by designation.

1

                    MICHAEL J. ROTKO
                    United States Attorney

                    WALTER S. BATTY, JR.
                    Assistant United States Attorney
                    Chief of Appeals

                    NICHOLAS C. HARBIST (Argued)
                    Assistant United States Attorney

                    JAMES J. EISENHOWER, III (Argued)
                    Assistant United States Attorney

                    615 Chestnut Street, Suite 1250
                    Philadelphia, PA 19106

        Attorneys for Appellee, United States of America

                    CHARLES TIEFER (Argued)
                    Acting General Counsel

                    MICHAEL L. MURRAY
                    Senior Assistant Counsel

                    RICHARD P. STANTON
                    Assistant Counsel

                    OFFICE OF THE GENERAL COUNSEL
                    U.S. HOUSE OF REPRESENTATIVES
                    The Capitol, H-112
                    Washington, DC 20515

        Attorney for Amici Curiae, Speaker and Bipartisan Leadership
            Group of the United States House of Representatives
                    _____

                    OPINION OF THE COURT
                    _____


ALITO, Circuit Judge:

        Joseph M. McDade, a member of the United States House
of Representatives, took this appeal from a pretrial order in the
criminal prosecution now pending against him in federal district
court.  The order in question denied a variety of defense

motions, including a request for dismissal of all or portions of his indictment under the Speech or Debate Clause of the Constitution, Art. 1, § 6, cl. 1.  We affirm the district court's rulings relating to dismissal of the indictment under the Speech or Debate Clause, but we hold that we lack jurisdiction at this time to review the district court's other rulings.

## I.

In May 1992, a federal grand jury in the Eastern District of Pennsylvania returned a five-count indictment against the defendant.  Counts I and III charge that the defendant entered into two separate conspiracies, in violation of 18 U.S.C. § 371.  Each of these conspiracies allegedly had two objectives: first, defrauding the United States of the defendant's honest, loyal, and faithful service and other intangible benefits and, second, "directly and indirectly seeking, accepting and receiving things of value for and because of official acts performed and to be performed by [the defendant] otherwise than as provided by law for the proper discharge of his official duty," in violation of what is now 18 U.S.C. § 201(c)(1)(B).[0]  Both counts begin by stating that the defendant was a member of Congress during the relevant period, that he became the ranking minority member of the House Small Business Committee "in or about 1982," and that he became the ranking minority member of the House Appropriations

---

[0]Prior to 1986, this provision was designated as 18 U.S.C. §201(g).

4

Committee, Subcommittee on Defense Appropriations "[i]n or about January, 1985."

Count I, which contains considerable factual detail, alleges a conspiracy involving a minority-owned small business called United Chem Con Corporation ("UCC"), its president and majority stockholder (James B. Christian), and its attorney and lobbyist (Raymond S. Wittig), who had previously served as minority counsel to the House Small Business Committee during the time when the defendant was the committee's ranking minority member. Count I alleges that, as part of the conspiracy it charges, the defendant "would and did solicit, accept and receive money and other things of value, directly and indirectly, from UCC, Christian and Wittig in the form of sham campaign contributions, free aircraft transportation, vacations and other gratuities in return for his influence and because of his support for UCC's interests in obtaining and maintaining UCC's government contracts and Small Business Administration program eligibility." Count I further alleges, among other things, that as part of the conspiracy the defendant "would and did, for money and other things of value, use his influence to intercede and cause others to intercede with employees of the Department of the Navy, SBA, United States Postal Service and other departments and agencies" to obtain favorable treatment for UCC. Count I lists 47 overt acts, including the defendant's writing of letters to Navy and SBA officials on UCC's behalf and the defendant's taking of trips that were paid for by UCC.

Count III charges a somewhat similar conspiracy involving several defense contractors (the Gruman Corporation, the Kane Paper Corporation, and the Sperry Corporation and its corporate successors), as well as James Kane (the president and chief executive officer of Kane Paper) and Charles Gardner (a vice-president of Sperry). Count III, which also contains detailed factual allegations, alleges that, as part of this conspiracy, "James Kane and Charles Gardner would and did join forces in order to influence public officials including [the defendant], with respect to their official actions on behalf of Gruman and Sperry, by providing money and other things of value, including sham campaign contributions, free vacations and private aircraft transportation to public officials, and `scholarships' for the children of public officials." Count III lists 18 overt acts, including the defendant's writing of a letter to the Secretary of the Army concerning an Army radio system, known as SINCGARS (Single Channel Ground and Airborne Radio System), for which Gruman was seeking a "second source" contract.

Count II charges that the defendant violated 18 U.S.C. § 201(c)(1)(B) by soliciting, accepting, receiving, and agreeing to receive "the payment of round-trip aircraft transportation expenses by UCC from Washington, D.C. to Scranton, Pennsylvania, for and because of official acts performed and to be performed by [the defendant], otherwise than as provided by law for the proper discharge of official duty." Count IV charges that the defendant violated this same provision by soliciting, accepting, receiving, and agreeing to receive "free aircraft transportation from

6

Washington, D.C. to Philadelphia, Pennsylvania, and then to Scranton, Pennsylvania from Philadelphia, Pennsylvania, from the Grumman Corporation, for and because of official acts performed and to be performed by [the defendant], otherwise than as provided by law for the proper discharge of official duty."

Finally, Count V charges that the defendant conducted and participated in conducting the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). Count V states that this enterprise consisted of the defendant, "his Congressional offices in Washington, D.C., and in the 10th Congressional District of Pennsylvania," the staff members working in those offices, and "staff members who worked at his direction on the congressional committees on which he held official positions." As predicate acts, Count V charges that the defendant solicited, agreed to receive, and accepted bribes[0] and illegal gratuities,[0] and committed acts of extortion.[0]

In January 1993, the defendant filed what he styled an "omnibus" motion package. Among other things, these motions sought dismissal of all or portions of the indictment on the ground that it violated the Speech or Debate Clause. A bill of particulars and an offer of proof were also requested. After a hearing, the district court denied all of these requests. United States v. McDade, 827 F. Supp. 1153 (E.D. Pa. 1993). The

---

[0]See 18 U.S.C. § 201(c) (1982) (redesignated as 18 U.S.C. §201(b)(2) in 1986).
[0]See 18 U.S.C. § 201(g) (1982) (redesignated as 18 U.S.C. §201(c)(1) in 1986).
[0]See 18 U.S.C. § 1951(a).

defendant then took this appeal, invoking our jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine as applied in Helstoski v. Meanor, 442 U.S. 500, 506-07 (1979).

## II.

Before addressing the arguments raised by the defendant, we will first comment briefly on the basis for and the scope of our appellate jurisdiction. As noted, the defendant relies on the collateral order doctrine, under which a district court order entered prior to final judgment is immediately appealable if it (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment. See, e.g., Digital Equipment Corp. v. Desktop Direct, Inc., 62 U.S.L.W. 4457, 4458 (June 6, 1994); Midland Asphalt Corp. v. United States, 489 U.S. 794, 799 (1989); Abney v. United States, 431 U.S. 651, 659-62 (1977); Kulwicki v. Dawson, 969 F.2d 1454, 1459 (3d Cir. 1992). Recent cases have emphasized that the second prong of this test requires both that the issue be "important" and that it be completely separate from the merits. Digital Equipment, 62 U.S.L.W. at 4461-62; United States v. Santtini, 963 F.2d 585, 592 (3d Cir. 1992) (citing Praxis Properties, Inc. v. Colonial Sav. Bank, 947 F.2d 49, 58 (3d Cir. 1991)).

In Helstoski v. Meanor, 442 U.S. at 506-08, the Supreme Court held that all of the requirements of the collateral order doctrine were met by a district court order refusing to dismiss

8

an indictment pursuant to the Speech or Debate Clause.  The Court reasoned: (1) that this order represented "`a complete, formal and, in the trial court, final rejection'" of the claim that the indictment should be dismissed on this ground, id. at 506 (quoting Abney, 431 U.S. at 659); (2) that a Speech or Debate Clause claim is "`collateral to, and separable from, the principal issue at the accused's impending criminal trial, i.e., whether or not the accused is guilty of the offense charged,'" id. at 507 (quoting Abney, 431 U.S. at 659); and (3) that part of the protection conferred by the Speech or Debate Clause would be irreparably lost if an appeal had to await the final judgment, since "the Speech or Debate Clause was designed to protect Congressmen `not only from the consequences of litigation's results but also from the burden of defending themselves,'"  id. at 508 (quoting Dombrowski v. Eastland, 387 U.S. 82, 85 (1967)).

Under this precedent, we have jurisdiction to entertain the defendant's claim that the Speech or Debate Clause requires dismissal of the entire indictment or particular charges contained in the indictment.  We also have jurisdiction to review any of the district court's other rulings regarding the Speech or Debate Clause that satisfy all of the requirements of the collateral order doctrine.  Our jurisdiction, however, extends no further.  See Abney, 431 U.S. at 663.  "Adherence to [the] rule of finality has been particularly stringent in criminal prosecutions because `the delays and disruptions attendant upon intermediate appeal,' which the rule is designed to avoid, `are especially inimical to the effective and fair administration of

9

the criminal law.'" Id. at 657 (quoting DiBella v. United States, 369 U.S. 121, 126 (1962)). See also Midland Asphalt Corp., 489 U.S. at 799; Flanagan v. United States, 465 U.S. 259, 265 (1984). Consequently, we must be especially careful not to exceed the scope of the limited appellate jurisdiction conferred on us by the collateral order doctrine.

III.

A. Turning to the arguments raised by the defendant, we first consider his contention that the Speech or Debate Clause required dismissal of the entire indictment because it contains references to his position as ranking minority member of both the House Subcommittee on Defense Appropriations and the House Small Business Committee. Relying heavily on United States v. Swindall, 971 F.2d 1531 (11th Cir. 1992), cert. denied, 114 S. Ct. 683 (1994), the defendant asserts that "[a]pplication of the Speech or Debate Clause does not require, as the district court myopically construed it, a mechanical inquiry into whether the legislative matter involved consists of either `acts' or `status.'" Appellant's Br. at 18-19. Instead, the defendant contends that use of committee membership or position "as a proxy for legislative activity . . . contravenes the Speech or Debate Clause." Id. at 41. He goes on to explain that the indictment in this case impermissibly employs his "membership and function on the committees" as a proxy for protected legislative acts, viz., "what he did on the committee prior to the purported

10

agreement" and "what he did and was able to do at the time of the purported agreement."  Id. at 42.

We reject these arguments.  We will first explain why proof of legislative status, including status as a member or ranking member of a committee, is not prohibited by the Speech or Debate Clause.[0]  We will then discuss Swindall and explain why we do not believe that the decision in that case supports the defendant's position here.[0]  In doing so, we will explain why proof of the defendant's legislative status will not constitute a "proxy" for proof of legislative acts.

B.  It is now well settled -- and it is conceded by the defendant[0] -- that the Speech or Debate Clause does not prohibit proof of a defendant's status as a member of the United States Senate or House of Representatives.  Title 18, Section 201 of the United States Code includes two criminal offenses involving bribes and illegal gratuities that require proof of the defendant's membership in Congress.  See 18 U.S.C. §§ 201(b)(2), 201(c)(1)(B).  Similar provisions have existed for more than a century,[0] and governing precedent makes it clear that members of Congress may be prosecuted under such provisions without violating the Speech or Debate Clause.

In United States v. Brewster, 408 U.S. 501 (1972), the Supreme Court held that the defendant, a former senator, could be prosecuted under an indictment requiring proof of his legislative

_____

[0]See parts III.B. and III.C. of this opinion.
[0]See part III.D. of this opinion.
[0]Appellant's Br. at 41 n.24.
[0]See United States v. Helstoski, 442 U.S. 477, 493 n.8 (1979).

11

status. In that case, the indictment charged that the defendant had solicited, agreed to receive, and accepted bribes in return for being influenced in the performance of official acts in his capacity as a member of the Senate and a Senate committee. The indictment also charged him with receiving a gratuity for and because of official acts that he had performed in that capacity. The district court dismissed the indictment on the ground that the Speech or Debate Clause shields a member of Congress "from any prosecution for alleged bribery to perform a legislative act." See id. at 504 (internal quotations and citations omitted).

On direct appeal, however, the Supreme Court reversed. The Court first held that the Speech or Debate Clause did not prohibit proof that the defendant solicited, agreed to accept, or took bribes in return for being influenced in the performance of legislative acts. The Court stated:

> The illegal conduct is taking or agreeing to take money for a promise to act in a certain way. There is no need for the Government to show that [the defendant] fulfilled the alleged illegal bargain; acceptance of the bribe is the violation of the statute, not performance of the illegal promise.
>
> Taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act. . . . And an inquiry into the purpose of a bribe "does not draw in question the legislative acts of the defendant member of Congress or his motives for performing them."

Id. at 526 (quoting United States v. Johnson, 383 U.S. 169, 185 (1966)).

12

The Court further held that the Speech or Debate Clause did not prohibit proof that the defendant had solicited, agreed to receive, or accepted money for or because of official acts that had already been performed. The Court explained:

> To sustain a conviction [for this offense] it is necessary to show that [the defendant] solicited, received, or agreed to receive, money with knowledge that the donor was paying him compensation for an official act. Inquiry into the legislative performance itself is not necessary; evidence of the Member's knowledge of the alleged briber's illicit reasons for paying the money is sufficient to carry the case to the jury.

Id. at 527. Thus, Brewster clearly means that the Speech or Debate Clause permits a defendant to be prosecuted under an indictment alleging that, as a member of Congress, he or she solicited, agreed to receive, or accepted bribes or illegal gratuities. Since such a prosecution necessitates proof of the defendant's status as a member of Congress, Brewster establishes that such proof is allowed.

In United States v. Helstoski, 576 F.2d 511 (3d Cir. 1978) ("Helstoski I"), aff'd, 442 U.S. 477 (1979)), this court, applying Brewster, likewise held that a member of Congress could be prosecuted under an indictment requiring proof of his status as a member. There, a member of the House of Representatives had been indicted for soliciting and receiving payments in return for being influenced in the performance of official acts, as well as for conspiracy to commit such offenses. Relying on Brewster, the

13

district court had refused to dismiss the indictment.[0]  The defendant petitioned this court for a writ of mandamus, but we denied the petition, stating that "<u>Brewster</u> compel[led] the conclusion that the indictment . . . [did] not violate the Speech or Debate Clause" because the charges could be proven without showing that the defendant actually performed any legislative acts."[0]  <u>Id.</u> at 517.  Consequently, our decision in <u>Helstoski I</u>, like <u>Brewster</u>, clearly establishes that the Speech or Debate Clause permits proof of a defendant's status as a member of Congress.

     C.  Once this point is recognized, it follows that the Speech or Debate Clause also permits proof of a defendant's status as a member of a congressional committee or as the holder of a committee leadership position.  Article I, § 6 of the Constitution, which contains the Speech or Debate Clause, provides, in relevant part, as follows (emphasis added):

> <u>The Senators and Representatives</u> shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States.  They shall in

---

[0] The district court also held that proof of past legislative acts would not be permitted.  The government appealed this ruling under 18 U.S.C. § 3731, but both this court and the Supreme Court affirmed.  <u>See</u> <u>United States v. Helstoski</u>, 576 F.2d 511 (3d Cir. 1978), <u>aff'd</u>, 442 U.S. 477 (1979).

[0] The Supreme Court affirmed this portion of our decision on the ground that mandamus was not the appropriate vehicle for seeking review of the district court's order refusing to dismiss the indictment under the Speech or Debate Clause, since that order was "final" under the collateral order doctrine and was thus appealable under 28 U.S.C. § 1291.  <u>Helstoski v. Meanor</u>, 442 U.S. 500.  On remand, the district court dismissed the indictment, holding that evidence protected by the Speech or Debate Clause tainted the grand jury's deliberations, and this court affirmed.  <u>United States v. Helstoski</u>, 635 F.2d 200 (3d Cir. 1980).

14

all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

This language confers rights on members of Congress in their capacity as members; it makes no reference to membership on a congressional committee or to any other position held within Congress. Consequently, we see no textual basis for arguing that a member of Congress may obtain greater protection under the Speech or Debate Clause by becoming a member of a congressional committee or attaining a leadership position. Furthermore, we are aware of no other evidence that the Speech or Debate Clause was intended to provide greater protection for committee members or congressional leaders, and no decision of the Supreme Court or of this court supports such an argument.

It is also noteworthy that the indictment in Brewster, like the indictment in this case, made specific reference to the defendant's committee status. The opinion of the Court in Brewster noted that four counts of the indictment charged the defendant with violating the federal bribery statute "while he was a Senator and a member of the Senate Committee on Post Office and Civil Service." 408 U.S. at 502 (emphasis added). Justice Brennan's dissent likewise noted that these counts "charged Senator Brewster with receiving $19,000 `in return for being influenced in his performance of official acts in respect to his action, vote, and decision on postage rate legislation which

15

might at any time be pending before him in his official capacity [as a member of the Senate Post Office Committee].'" Id. at 529 (Brennan, J., dissenting) (brackets in original) (emphasis added). Nevertheless, the Court held that the Speech or Debate Clause did not prohibit the defendant's prosecution on these charges.

Accordingly, we agree with the district court in this case that the Speech or Debate Clause does not require dismissal of any count of the indictment simply because it refers to the defendant's status as a member or ranking member of two congressional committees.

D. In arguing that the indictment in this case must be dismissed because of its references to his committee memberships and positions, the defendant relies chiefly on the Eleventh Circuit's decision in United States v. Swindall, 971 F.2d 1531. When Swindall is properly understood, however, we do not believe that it supports the defendant's position here.

1. While a member of the House of Representatives, Congressman Swindall sat on committees that considered two statutes, 18 U.S.C. § 1956 and 31 U.S.C. § 5324, prohibiting "money laundering" and the "structuring" of financial transactions to avoid reporting requirements. Congressman Swindall subsequently attempted to sell a large promissory note that he held, and he turned for assistance to an associate, Charles LeChasney, who was laundering money for a federal agent posing as a representative of drug dealers. Through LeChasney, Congressman Swindall met and spoke with the undercover agent

16

about the sale of the note, but he ultimately decided not to go through with the transaction.  After LeChasney was indicted for money laundering, Congressman Swindall testified before a grand jury concerning his discussions about the sale of the note.  He was then indicted on ten counts of making false statements before the grand jury and was later convicted on nine of these counts.  See 971 F.2d at 1538-39.

On appeal, the Eleventh Circuit held that three of these counts had to be dismissed because they had been obtained using evidence barred by the Speech or Debate Clause.  The statements on which these three counts were based all related to Congressman Swindall's knowledge that the statutes noted above prohibited some of the financial transactions that had been discussed.  The Eleventh Circuit wrote that during the grand jury proceedings the prosecutor had "sought to establish, by questioning Swindall, that because of his memberships on the House Banking and Judiciary Committees, Swindall had knowledge of the money-laundering and transaction-structuring statutes."  Id. at 1539 (footnote omitted).[0]  Concluding that this questioning violated the Speech or Debate Clause, the court explained:

> There are two reasons why the Speech or
> Debate Clause prohibits inquiry into a member
> of Congress's committee assignments even if
> the member's specific legislative acts are
> not mentioned.  First, our review of Supreme
> Court precedent convinces us that the
> privilege protects legislative status as well
> as legislative acts.  Second, here the
> government's inquiry into Swindall's
> committee memberships actually amounted to an

---

[0]The court added that the prosecution had used the same tactic at Swindall's trial.  See id. at 1542.

17

> inquiry into legislative acts. The
> government was allowed to argue a permissive
> inference that Swindall knew the details of
> the money-laundering statutes because of his
> status as a member of the Banking and
> Judiciary Committees. If the inference is
> drawn that Swindall acquired knowledge of the
> statutes through committee memberships, one
> sees that Swindall could have acquired such
> knowledge only by performing a legislative
> act such as reading a committee report or
> taking to a member of his staff.

Id. at 1543 (emphasis in original). The court then devoted a

separate section of its opinion to each of these "reasons."

Id. at 1544-46.

Addressing the first reason in a portion of its opinion

bearing the heading "The Speech or Debate Clause and Legislative

Status," id. at 1544, the court argued that Supreme Court

precedent did not draw "a distinction between `activity' and

`status,'" but instead called for an inquiry into whether

allowing questioning about committee membership would undermine

the legislative process or legislative independence.[0]   Id. at

1545. The court then concluded that these harmful effects would

be threatened if prosecutors were permitted to use a member's

---

[0]Specifically, the court wrote:

> Rather than calling for a distinction between
> "status" and "activity," Supreme Court
> precedent directs us to ask: does inquiry
> into a legislator's committee memberships
> directly impinge on or threaten the
> legislative process? Does it make
> legislators accountable before a possibly
> hostile judiciary? And does it indirectly
> impair legislative deliberations? The answer
> to each of these questions is yes.

Swindall, 971 F.2d at 1545 (citations omitted).

committee assignments for the purpose of establishing the member's knowledge of the contents of bills considered by the committee.  Id.

Turning to the second reason in the portion of its opinion bearing the heading "Swindall's Legislative Activities, Not Merely His Status, Were The Subject of The Government's Inquiry," id. at 1546, the court argued that the government had used Swindall's committee memberships to show that he had performed legislative acts, i.e., that he had read or otherwise acquired knowledge of the contents of the bills in question.  The court wrote:  "The government introduced evidence of Swindall's committee memberships to prove that he performed a legislative act to acquire knowledge of the contents of the bills, which is precisely what the clause prohibits."  Id.

2.  While the Swindall opinion contains language that may be read out of context to mean that the Speech or Debate Clause flatly prohibits proof of legislative status, we believe that a close examination of the Swindall opinion and its reasoning suggests that the court did not intend to adopt such a broad holding.  As previously noted, the portion of the opinion devoted to the discussion of legislative status asserts that the distinction between legislative "status" and legislative "activity" is not dispositive for Speech or Debate Clause purposes and that a court entertaining a Speech or Debate Clause claim should instead consider whether permitting the prosecution to inquire into a member's committee status would undermine the legislative process or legislative independence.  If the Swindall

19

court had meant to hold that proof of legislative or committee status is <u>never</u> allowed for any purpose, one would expect the court to have argued, as the next step in its chain of reasoning, that such proof <u>always</u> undermines the legislative process and legislative independence.  Instead, however, the <u>Swindall</u> court rested on a much narrower argument, namely, that the legislative process and legislative independence would be undermined if prosecutors could inquire into a member's committee status <u>for the purpose of showing that the member had acquired knowledge of the contents of the bills considered by his committees.</u>  The court wrote:

> It seems obvious that levying criminal or civil liability on members of Congress for their knowledge of the contents of the bills considered by their committees threatens or impairs the legislative process. . . .
>
> If legislators thought that their personal knowledge of such bills could one day be used against them, they would have an incentive (1) to avoid direct knowledge of a bill and perhaps even memorialize their lack of knowledge by avoiding committee meetings or votes, or (2) to cease specializing and attempt to become familiar with as many bills as possible, at the expense of expertise in any one area.  Either way, the intimidation caused by the possibility of liability would impede the legislative process.

<u>Id.</u> at 1545.  This reasoning does not suggest that permitting inquiry into committee membership should never be allowed, but only that such inquiry should not be allowed when made for the limited purpose discussed.

20

Based on this understanding of <u>Swindall</u>'s discussion of legislative status, we do not believe that that discussion supports the defendant's position here. In this case, the indictment does not recite, and the prosecution does not propose at trial to use, the defendant's committee memberships or positions for the purpose of establishing that he thereby acquired knowledge of bills under consideration by the committee. Accordingly, <u>Swindall</u>'s holding regarding legislative status is inapplicable.

3. Similarly, the defendant in this case is not aided by <u>Swindall</u>'s discussion of legislative "activities." In <u>Swindall</u>, according to the Eleventh Circuit, the government used proof of the defendant's membership on certain committees to show that he had performed what the court regarded as legislative acts, i.e., reading or otherwise acquiring knowledge about bills considered by those committees. Attempting to analogize his situation to that in <u>Swindall</u>, the defendant in this case argues as follows:

> Just as evidence of membership on the House Banking and Judiciary committees in <u>Swindall</u> implied knowledge of the money laundering and transaction structuring statutes . . . so evidence of Congressman McDade's membership and function on the committees is a proxy for what he did on the committee prior to the purported agreement and what he did and was able to do at the time of the purported agreement. Stated differently, Congressman McDade acquired these abilities only through the committee memberships and only by performing legislative acts.

Appellant's Br. at 42.

21

This argument is fallacious and is contrary to the Supreme Court's reasoning in leading Speech or Debate Clause decisions. In those decisions, the Court has held that the Clause prohibits only proof that a member actually performed a legislative act. As the Court has put it, the protection of the Clause "extends only to an act that has already been performed." United States v. Helstoski, 442 U.S. at 490. Thus, the Court has held, the Clause does not prohibit closely related but nevertheless distinct showings, such as that a member promised to perform a legislative act in the future or even that a member was thought to have performed a legislative act in the past and was paid in exchange for or because of it. See id.; Brewster, 408 U.S. at 526-27. Once this is recognized, the fallacy in the defendant's argument is apparent, for in this case the indictment relies on the defendant's committee status, not to show that he actually performed any legislative acts, but to show that he was thought by those offering him bribes and illegal gratuities to have performed such acts and to have the capacity to perform other similar acts.

That the argument made by the defendant in this case is contrary to Brewster and Helstoski I can be demonstrated by showing that precisely the same argument could have been made for the purpose of establishing that the Speech or Debate Clause prohibited proof of Senator Brewster's or Representative Helstoski's membership in Congress. Thus, if the previously quoted statement from the defendant's brief were correct, the following version of that statement (in which references to the

22

defendant have been replaced by references to Senator Brewster

and Representative Helstoski) would also be correct:

> Just as evidence of membership on the House Banking and Judiciary committees in <u>Swindall</u> implied knowledge of the money laundering and transaction structuring statutes . . . so evidence of [Senator Brewster's or Representative Helstoski's] membership [in Congress] is a proxy for what he did [in Congress] prior to the purported agreement and what he did and was able to do at the time of the purported agreement.  Stated differently, [Senator Brewster or Representative Helstoski] acquired these abilities only through [their membership in Congress] and only by performing legislative acts.

We know, however, that the Speech or Debate Clause did not prohibit proof of Senator Brewster's or Congressman Helstoski's membership in Congress.  Likewise, in this case, the Speech or Debate Clause does not prohibit proof of the defendant's committee status for the purposes proffered by the prosecution.

In sum, we do not believe that <u>Swindall</u>, when properly understood, supports the defendant's arguments in this case.  If, however, we have misinterpreted the intended meaning of the <u>Swindall</u> court and that court meant to embrace the proposition that the Speech or Debate Clause broadly prohibits proof of legislative or committee status, we would be compelled, for the reasons already explained, to disagree.

## IV.

The defendant also contends that the indictment in this case violates the Speech or Debate Clause because it will force

23

him to introduce evidence of legislative acts in order to refute the charges against him. Again, we disagree.

First, the text of the Speech or Debate Clause does not support the defendant's argument. The Clause protects a member of Congress from being "questioned," and a member is not "questioned" when he or she chooses to offer rebuttal evidence of legislative acts.

Second, the defendant's argument seems to us contrary to the clear implication of the Supreme Court's holding in Brewster. In Brewster, as discussed above, the Court held that a member of Congress may be prosecuted for soliciting, agreeing to receive, or receiving a bribe or illegal gratuity in exchange for or because of his or her performance of a legislative act. Such a charge, however, often makes it tactically advantageous for a member to respond with proof of his or her legislative acts. If, for example, the member is charged with accepting a bribe in exchange for supporting certain legislation, and the member ultimately did not support the legislation, the member may well find it tactically beneficial to introduce evidence of his or her lack of support. Or, if the member did ultimately support the legislation, the member may well find it tactically advantageous to offer evidence of his or her assertedly legitimate reasons for doing do. In either event, the charge may be said to have pressured the member into responding with proof of legislative acts. Thus, implicit in the type of bribery prosecution

24

sanctioned in <u>Brewster</u> is the very sort of tactical pressure of which the defendant in this case complains.[0]

For these reasons, we agree with the Second Circuit's reasoning and conclusion in <u>United States v. Myers</u>, 635 F.2d 932, 942 (2d Cir.), <u>cert. denied</u>, 449 U.S. 956 (1980):

> The protection against being "questioned" outside of Congress prevents the use of legislative acts against a Member.  It does not prevent him from offering such acts in his own defense, even though he thereby subjects himself to cross-examination.[0]

## V.

We turn next to the defendant's and his amici's arguments concerning count V of the indictment, which charges that the defendant violated 18 U.S.C. § 1962(c) by conducting and

---

[0]The <u>Brewster</u> Court was undoubtedly aware that a member of Congress being prosecuted for accepting a bribe or illegal gratuity might find it advantageous to introduce evidence of legislative acts to rebut the government's case against him or her.  <u>See</u> 408 U.S. at 561 (White, J., dissenting):

> In the trial of a Congressman for making a corrupt promise to vote . . . proof that his vote was in fact contrary to the terms of an alleged bargain will make a strong defense. . . . As a practical matter, to prosecute a Congressman for agreeing to accept money in exchange for a promise to perform a legislative act inherently implicates legislative conduct.

[0]Of course, a Congressman cannot be <u>forced</u> to refute charges that directly implicate legitimate legislative acts.  <u>See</u> <u>Gravel v. United States</u>, 408 U.S. 606, 616 (1972) ("We have no doubt that Senator Gravel may not be made to answer -- either in terms of questions or in terms of defending himself from prosecution. . . ."

25

participating in the affairs of a RICO enterprise through a pattern of racketeering activity.

A.  The defendant contends that this charge violates the Speech or Debate Clause because the prosecution, in order to prove the existence of an enterprise within the meaning of the RICO statute, will be compelled to prove that he performed legislative acts.  The defendant correctly notes that a RICO enterprise must be something more than simply the pattern of racketeering activity through which the racketeers conducted or participated in its affairs.  See, e.g., United States v. Pelullo, 964 F.2d 193, 211 (3d Cir. 1992); United States v. Riccobene, 709 F.2d 214, 221-24 (3d Cir.), cert. denied, 464 U.S. 849 (1983).[0]  Relying on this doctrine, the defendant maintains:

> Since the enterprise encompasses
> congressional and committee staff members
> with purely legislative responsibilities, the
> Department [of Justice] cannot excise this
> legislative conduct from "The Office of the
> Honorable Joseph M. McDade" and still meet
> its burden of proof on the issue of
> separateness in establishing the RICO
> enterprise.

Appellant's Br. at 36-37.  The defendant further argues that the prosecution will be required to prove how his office

---

[0]As we explained in Pelullo, 964 F.2d at 211, proof of an enterprise requires evidence:

> (1) that the enterprise is an ongoing
> organization with some sort of framework for
> making or carrying out decisions; (2) that
> the various associates function as a
> continuing unit; and (3) that the enterprise
> be separate and apart from the pattern of
> activity in which it engages.

26

"legitimately functioned" and that it will therefore be required to prove that legislative acts were committed.  Id. at 37.

Contrary to the defendant's arguments, however, we see no basis for concluding that the prosecution will be unable to prove the enterprise charged in count V of the indictment without proving that the defendant or staff members acting under his direction performed legislative acts.  For one thing, the prosecution may be able to establish the existence of this enterprise by proof relating to official but (for Speech or Debate Clause purposes) non-legislative acts.  The Speech or Debate Clause does not immunize every official act performed by a member of Congress.  See Doe v. McMillan, 412 U.S. 306, 313 (1973).  Rather, as the Supreme Court has stated:

> The heart of the Clause is speech or debate in either House.  Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

Gravel v. United States, 408 U.S. 606, 625 (1972).  See also Eastland v. United States Servicemen's Fund, 421 U.S. 491, 504 (1975); McMillan, 412 U.S. at 314.  Accordingly, the Clause does not shield "a wide range of legitimate `errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called `news letters' to constituents, news releases, and

27

speeches delivered outside the Congress." Brewster, 408 U.S. at 512. See also Hutchinson v. Proxmire, 443 U.S. 111 (1979) (issuance of press releases and newsletters not protected); McMillan, 412 U.S. 306 (public dissemination of a congressional report not protected); Gravel v. United States, 408 U.S. 606 (private republication of documents introduced and made public at a congressional hearing not protected). Thus, the prosecution in this case may be able to prove the existence of the enterprise charged in count V based on evidence relating to some of these or other similar unprotected activities.

In addition, the prosecution may be able to prove the existence of the enterprise in question by evidence relating to unofficial or ultra vires conduct that is separate from the pattern of racketeering activity. What the prosecution will ultimately attempt to show and what it will be able to show in this regard are not dispositive for present purposes. Because it is clearly possible for the prosecution to prove the separate existence of the enterprise charged in count V without violating the Speech or Debate Clause, we must affirm the district court's decision not to dismiss that count.[0]

B. The defendant's amici, the Speaker and Bipartisan Leadership Group of the United States House of Representatives,

---

[0] We also disagree with the defendant's argument that the Speech or Debate Clause requires excision from the indictment of all RICO predicate offenses that are based on the illegal receipt of gratuities and extortion. The defendant contends that these predicates improperly rely on his status as a committee member, but this contention is merely a variant of the argument that we discussed and rejected in Part III of this opinion.

28

advance a different Speech or Debate Clause argument pertaining to the RICO count.  The amici begin by contending that the Speech or Debate Clause prohibits a RICO charge that defines the "enterprise" as Congress or a congressional committee.  This rule, the amici maintain, is needed to protect Congress and its committees from Executive Branch intimidation or interference.  The amici then argue that this prohibition cannot be circumvented by defining a RICO enterprise as an association-in-fact consisting of all of the members and staff of Congress or of a particular congressional committee.

We are skeptical about the validity of these arguments and, in any event, we do not believe that they are applicable here.  First, we are doubtful that an indictment alleging that a congressional committee constitutes an "enterprise" under 18 U.S.C. § 1962(c) would intimidate or interfere with Congress, as the amici suggest.  Such a charge would not accuse the committee, as a formal entity, with wrongdoing; nor would it seek the imposition of any sanctions on the committee as such.  Rather, such a charge would imply that, in the view of the grand jury, the committee had been exploited by the individuals charged as defendants.  A major purpose of the RICO statute was to protect legitimate enterprises by attacking and removing those who had infiltrated them for unlawful purposes.  See Russello v. United States, 464 U.S. 16, 28 (1983);  United States v. Turkette, 452 U.S. 576, 591 & n.13 (1981).  Consequently, an indictment defining a congressional committee as the "enterprise" under 18

U.S.C. § 1962(c) would suggest that the committee as a formal entity was a victim, not a wrongdoer.

Second, assuming for the sake of argument that the Speech or Debate Clause prohibits an indictment under 18 U.S.C. §1962(c) that defines a congressional committee as the enterprise, we fail to see why the RICO charge in this case would have to be dismissed, since it does not define the enterprise as a committee. The amici contend that prosecutors should not be able to accomplish indirectly what they cannot accomplish directly and that therefore they should be precluded from proceeding under an indictment that charges all of the members of a committee and its staff as an association-in-fact RICO enterprise. This argument, however, is both inapplicable to this case and questionable on its own terms. The RICO count in this case does not allege an enterprise consisting of all of the members and/or staff of the committees to which the defendant belonged. Instead, as we have noted, that count defines the "enterprise" as consisting of only one committee member (the defendant) and only those staff members who worked under his direction.

Moreover, even if the amici's argument were applicable to this case, we would find it questionable. Suppose that all of the members of a committee and its staff formed an association that satisfied all of the requirements of a RICO enterprise and that the committee members and staff engaged in a pattern of soliciting and receiving bribes and illegal gratuities from a large number of persons or entities interested in the outcome of

30

the committee's work.  The Speech or Debate Clause would not prevent all of the committee and staff members from being individually prosecuted on substantive charges of taking bribes and illegal gratuities.  See Brewster, 408 U.S. 501.  Nor would the Clause prevent all of the committee and staff members from being prosecuted for conspiring to take illegal bribes or gratuities.  See Helstoski I, 576 F.2d at 517.  We therefore find it difficult to understand why the Speech or Debate Clause would protect these same individuals from being prosecuted under 18 U.S.C. § 1962(c) for participating in a RICO scheme based on essentially the same underlying conduct.  If the substantive and conspiracy charges mentioned above would not unconstitutionally intimidate or interfere with Congress, it is unclear why a RICO charge based on essentially the same underlying conduct would do so.

C.  In addition to these arguments based on the Speech or Debate Clause, the amici also offer an argument grounded on RICO itself.  Specifically, the amici maintain that Congress did not intend to include itself or its committees within the meaning of the term "enterprise" as it is used in the RICO statute and that Count V therefore does not state a RICO offense.  We hold, however, that our limited appellate jurisdiction under the collateral order doctrine does not encompass this argument. Since this argument is not based on the Speech or Debate Clause, it does not fall within the reasoning of Helstoski v. Meanor, 442 U.S. 500.  Rather, it is governed by the holding in Abney, 431 U.S. at 663, that "an order denying a motion to dismiss an

31

indictment for failure to state an offense" is not appealable pursuant to the collateral order doctrine.  Thus, we lack jurisdiction to review this question at this time.

VI.

We now come to the defendant's final group of arguments.  The defendant contends that the district court should have dismissed the indictment because it "runs afoul of the Speech or Debate Clause, both on its face and by being vague as to whether various allegations involve legislative or purely political acts."  Appellant's Br. at 25.  Relying on Government of the Virgin Islands v. Lee, 775 F.2d 514 (3d Cir. 1985), In re Grand Jury Investigation (Eilberg), 587 F.2d 589 (3d Cir. 1978), and precedent concerning double jeopardy claims,[0] the defendant then argues that the district court at least should have ordered the government to provide a bill of particulars or should have conducted a pretrial proceeding to explore Speech or Debate Clause issues.  At one point, the defendant suggests that the government should have been compelled before trial to "provide proof, subject to appellate review, that the prosecution does not violate the Clause."  Id. at 26.  Later, however, he states that the Speech or Debate Clause did not require pretrial rulings on all of the evidentiary questions that might develop during the trial but instead "necessitate[d] an inquiry limited to the allegations implicating the Speech or Debate Clause."  Id. at 30

_____

[0]See United States v. Inmon, 568 F.2d 326 (3d Cir. 1977).

32

n.15.  "[T]he precise scope of that inquiry," he adds, "depend[s] on the indictment."  Id.

As we understand the defendant's arguments, they pose the following four questions.  First, was the district court required to dismiss the entire indictment or any part of the indictment for lack of the specificity allegedly required by the Speech or Debate Clause?  Second, was the district court required to dismiss any charge in the indictment (or to conduct a hearing in order to determine whether to dismiss any charge in the indictment) on the ground that it is based on conduct that is protected by the Speech or Debate Clause?  Third, even if no charge had to be dismissed, was the district court required to strike any allegations in the indictment (or to conduct a hearing in order to determine whether to strike any allegations in the indictment) on the ground that they concern legislative acts protected by the Speech or Debate Clause?  And, fourth, was the district court required to make a pretrial ruling barring the prosecution from proving these allegations at trial?  We will discuss each of these questions in turn.

A.  <u>Was the district court required to dismiss the entire indictment or any part of the indictment for lack of the specificity allegedly required by the Speech or Debate Clause</u>?

We do not believe that the Speech or Debate Clause required dismissal of all or any part of the indictment for vagueness. The defendant cites no authority for the proposition that the Clause imposes pleading requirements, and we do not think that the Clause imposes such requirements per se.  We agree

that the prosecution, in a case with potential Speech or Debate Clause issues, must provide sufficient notice of the nature of the charges so that a motion for dismissal on Speech or Debate Clause grounds can be adequately litigated and decided.  However, we see no basis for concluding that the Speech or Debate Clause requires that this notice be furnished in the indictment itself.  Furthermore, the indictment in this case is replete with factual details, and as noted below,[0] the defendant has specifically cited only a few allegations that he claims are impermissibly vague.  Thus, we reject the defendant's argument that the indictment in this case is too vague to satisfy the Speech or Debate Clause.[0]

B.  <u>Was the district court required to dismiss any charge in the indictment (or to conduct a hearing in order to determine whether to dismiss any charge in the indictment) on the ground that it is based on conduct that is protected by the Speech or Debate Clause</u>?  The defendant cites two categories of allegations in the indictment that he claims are ambiguous and therefore necessitated evidentiary exploration in order to determine whether they violate the Speech or Debate Clause: allegations concerning his travels and allegations concerning his contacts with the Executive Branch.  We agree with the defendant

---

[0]<u>See</u> <u>infra</u>, pp. 35, 38–39.
[0]We clearly lack jurisdiction at this time to consider whether, pursuant to provisions of law other than the Speech or Debate Clause, the indictment is sufficient or the government provided sufficient notice of the charges against the defendant. Consequently, our opinion should not be interpreted as expressing any view on such questions.

that if a district court lacks sufficient factual information to determine whether dismissal of a particular charge in an indictment is required under the Speech and Debate Clause, the court must obtain that information before trial by conducting a hearing or by some other means.  See Lee, 775 F.2d at 524-25; In re Grand Jury Investigation, 587 F.2d at 597.  In this case, however, no hearing or other procedure was needed for this purpose with respect to either of the categories of allegations that the defendant cites.

      1.  Travel.  Travel is an essential element of some of the offenses charged in the indictment,[0]  but we fully agree with the Second Circuit's conclusion in United States v. Biaggi, 853 F.2d 89, 104 (2d Cir. 1988), cert. denied, 489 U.S. 1052 (1989), that travel by a member of Congress to or from a location where the member performs legislative acts is not itself protected by the Speech or Debate Clause.

      The text of Article I, § 6 of the Constitution supports this view.  In addition to the Speech or Debate Clause, this provision contains the clause providing that "Senators and Representatives . . . shall in all Cases, except Treason, Felony, and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in

---

[0]For example, Counts II and IV charge the defendant with violating 18 U.S.C. § 201(c)(1)(B) by, among other things, actually receiving a thing of value for and because of official acts.  The thing of value alleged in these counts is travel or a payment for travel.  If travel or a payment for travel were protected by the Speech or Debate Clause, and could therefore not be proven, receipt of the specified thing of value could not be established.

going to and returning from the same . . ." (emphasis added).

Since this clause specifically addresses the protection enjoyed by members "in going to and returning from" the site of legislative activity and limits that protection to a qualified freedom from civil[0] arrest, it seems most unlikely that the very next clause, which is couched in terms of "Speech or Debate in either House," was meant to confer additional protection with respect to such travel.

Supreme Court precedent fortifies this conclusion. As observed earlier, the Court has held that the Speech or Debate Clause protects matters other than actual speech or debate only if they are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." Gravel, 408 U.S. at 625. Travel to and from the Capitol or any other site where legislative acts are performed, although a necessary precondition for the performance of these acts, is not an integral part of Congress's deliberative and communicative processes. If it were, then the Speech or Debate Clause would produce seemingly absurd results, such as immunizing a member of Congress from being prosecuted or sued for striking a pedestrian with his or her car while racing to the Capitol. As the Second Circuit has aptly stated:

---

[0] See Gravel, 408 U.S. at 614.

36

> [U]nless the focus of the legislation itself
> is transportation, the mere transport of
> oneself from one place to another is simply
> not "an integral part of the deliberative and
> communicative processes by which members
> participate in committee and House
> proceedings."  We conclude that the Speech or
> Debate Clause does not immunize a congressman
> from prosecution for interstate travel in
> furtherance of receipt of an unlawful
> gratuity, any more than it would immunize him
> for a charge of theft of services if he
> traveled as a stowaway.

Biaggi, 853 F.2d at 104 (citations omitted).

In this case, the defendant's briefs, in challenging the travel allegations in the indictment, do not claim or offer to prove anything more than that the travel in question was undertaken so that he could perform what he claims were legislative acts upon arriving at one of his final or intermediate destinations.  Therefore, the defendant's briefs do not claim or offer to prove facts that would be sufficient to establish that the travel at issue is protected by the Speech or Debate Clause, and we consequently have no basis for concluding that the district court was required to dismiss the charges based on the defendant's travel or to conduct a pretrial proceeding or otherwise delve further into the indictment's travel allegations.

2.  Executive Branch Contacts.  The Supreme Court has repeatedly stated that the Speech or Debate Clause does not apply to efforts by members of Congress to influence the Executive Branch.  See, e.g., McMillan, 412 U.S. at 313; Gravel, 408 U.S. at 625; Brewster, 408 U.S. at 512; Johnson, 383 U.S. at 172.

Nevertheless, the defendant and his amici argue that these statements do not apply to legislative "oversight."

Neither the defendant nor his amici have provided a definition of "oversight," but the term, as usually employed, appears to have a broad meaning. For example, a recent study explains that the term is used to refer to "a variety of techniques" for monitoring components of the Executive Branch, ranging from "formal procedures or processes, such as committee hearings" to "informal" techniques, "such as communication with agency personnel by staff or committee members" and even "casework" and program evaluations performed by private individuals or groups. Joel D. Aberbach, Keeping a Watchful Eye – The Politics of Congressional Oversight 130, 132 (1990). Activities at one end of this spectrum, such as committee hearings, are clearly protected by the Speech or Debate Clause. See Eastland, 421 U.S. at 504-06. Activities at the other end of the spectrum, such as routine casework for constituents, are just as clearly not protected. See Brewster, 408 U.S. at 512. Whether the Speech or Debate Clause shields forms of "oversight" falling between these extremes -- for example, letters or other informal communications to Executive Branch officials from committee chairmen, ranking committee members, or other committee members -- is less clear. See, e.g., Hutchinson, 443 U.S. at 121 n.10; Chastain v. Sundquist, 833 F.2d 311, 313-15 (D.C. Cir. 1987), cert. denied, 487 U.S. 1240 (1988); In re Grand Jury Investigation, 587 F.2d at 594-95; Hutchinson v. Proxmire, 579 F.2d 1027, 1031-32 (7th Cir. 1978), rev'd in part on other

38

grounds, 443 U.S. 111 (1979); McSurely v. McClellan, 521 F.2d 1024, 1036-40 (D.C. Cir. 1975).

In this case, the defendant's briefs mention only two specific allegations in the indictment -- overt act 16 in Count I and overt act 17 in Count III -- that concern the defendant's contact with Executive Branch officials[0] and that are claimed to involve protected "oversight,"[0] and we therefore limit our inquiry to consideration of these overt acts. Overt act 16 in count I alleges that the defendant caused a letter to be sent to the Secretary of the Navy warning that the Navy's decision to issue a "stop work" order with respect to UCC's work on a Navy project, the "Sea Shed" program, would be viewed by the defendant with "extreme gravity." Overt act 17 in count III alleges that the defendant wrote to the Secretary of the Army requesting that the Army delay in making a final decision on a possible "second-source" contract for the SINCGARS program. Both the "Sea Shed" program and the SINCGARS program fell within the jurisdiction of committees on which the defendant sat, and while the "Sea Shed" letter openly lobbies on behalf of UCC, a business in the defendant's district, the SINCGARS letter does not explicitly refer to any particular business seeking a "second-source"

---

[0] See Appellant's Br. at 32-33; Appellant's Reply Br. at 21.
[0] The defendant also mentioned his efforts to raise funds for a concert held at the Capitol on July 4, 1983. Appellant's Br. at 33 n.18. Raising money for this concert is mentioned in predicate act 1 of count V, which alleges that the defendant extorted from UCC a $10,000 contribution for this concert. This is not an allegation of contact with the Executive Branch. Moreover, we do not see how this alleged conduct can possibly be viewed as "oversight" or as protected under the Speech or Debate Clause.

39

contract. Instead, the SINCGARS letter discusses the broader policy question whether the Army should award such a contract before the General Accounting Office has completed its review of the "second-source" selection process. Thus, whatever the defendant's motivation in writing the SINCGARS letter, the letter appears on its face to fall into the above-described middle category of oversight activities.

Even if we were to hold, however, that both of the overt acts in question are invalid, no charge in the indictment would have to be dismissed. Both counts I and III, which charge conspiracies under 18 U.S.C. § 371, allege numerous other overt acts, and an indictment under 18 U.S.C. § 371 need only allege one overt act. See, e.g., Fiswick v. United States, 329 U.S. 211, 216 (1946); United States v. Kapp, 781 F.2d 1008, 1012 (3d Cir.), cert. denied, 475 U.S. 1024 (1986). Thus, irrespective of the validity of the two overt acts in question, it is apparent that the district court was not required to dismiss (or to conduct a hearing in order to determine whether to dismiss) either count I or count III.

C. Even if no charge had to be dismissed, was the district court required to strike any allegations in the indictment (or to conduct a hearing in order to determine whether to strike any allegations in the indictment) on the ground that they concern legislative acts protected by the Speech or Debate Clause? Since we have held that the defendant's arguments regarding travel lack merit under the Speech or Debate Clause, the remaining allegations that we must now address are those

40

concerning the defendant's contacts with the Executive Branch. But before considering whether the district court was required to strike these allegations or to conduct a hearing to determine whether they should be stricken, we must decide whether we have jurisdiction at this time to decide these questions. Although the parties and the amici in this case seem to assume that any ruling under the Speech or Debate Clause is appealable under the collateral order doctrine, neither the Supreme Court nor this court has so held. In Helstoski v. Meanor, 442 U.S. at 508, the Supreme Court held only that the collateral order doctrine authorizes a pretrial appeal of an order refusing to dismiss criminal charges under the Speech or Debate Clause. Therefore, we must decide whether to go beyond Helstoski v. Meanor and hold that the collateral order doctrine applies to a pretrial refusal to strike overt acts that are not essential to the offense charged.[0] We conclude that it does not apply to this category of claims.

The question whether the two overt acts should have been stricken (divorced from the question whether proof of those acts at trial should have been barred) does not satisfy the requirement that the right at issue in a collateral order appeal must be jurisprudentially "important," i.e., "sufficiently

---

[0] Although we have found no indication that the defendant asked the district court for this precise form of relief, we will assume, under the particular circumstances here, that such a request was subsumed within the defendant's request for dismissal of the indictment and, similarly, that the district court's refusal to dismiss the indictment constituted a refusal to strike these two overt acts.

41

important to overcome the policies militating against interlocutory appeals." Santtini, 963 F.2d at 592 (quoting Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 502 (1989) (Scalia, J., concurring)). See also Digital Equipment Corp., 62 U.S.L.W. at 4461–62; Nemours Found. v. Manganaro Corp., 878 F.2d 98, 100 (3d Cir. 1989); Praxis Properties, 947 F.2d at 56. As we have noted, striking these overt acts would not require the dismissal of any charge in the indictment. In addition, neither retention of these overt acts in the indictment nor their removal would in itself have any evidentiary significance. As juries are customarily instructed, the indictment is not evidence.[0] Retention of these overt acts in the indictment does not necessarily mean that the prosecution will attempt or will be permitted to prove them at trial. Similarly, the absence of these overt acts from the indictment would not in itself preclude the prosecution from proving them or from relying on such proof to satisfy the overt act requirement contained in 18 U.S.C. §371.[0] Accordingly, the asserted right to have the two overt acts stricken before trial (or to have a hearing on that question), far from being important, appears to have little significance.[0]

[0] See, e.g., Fetters v. United States ex rel. Cunningham, 283 U.S. 638, 641–42 (1931); United States v. DePeri, 778 F.2d 963, 979 (3d Cir. 1985), cert. denied, 476 U.S. 1159 (1986).
[0] See, e.g., United States v. Adamo, 534 F.2d 31, 38 (3d Cir.), cert. denied, 429 U.S. 841 (1976); United States v. United States Gypsum Co., 600 F.2d 414, 419 (3d Cir.), cert. denied, 444 U.S. 884 (1979).
[0] Under some circumstances, language in an indictment, even though lacking any legal effect, may be prejudicial. See, e.g., United States v. Vastola, 899 F.2d 211, 231–32 (3d Cir.), vacated, 497

D.  Was the district court required to make a pretrial ruling barring the prosecution from proving these allegations at trial?  We need not decide if the question whether the district court should have barred proof of these acts at trial is jurisprudentially "important" because this question fails to satisfy other requirements of the collateral order doctrine.  For one thing, the district court did not "conclusively" rule on this question; rather, the court deferred any ruling on such evidentiary questions until trial.  See 827 F. Supp. at 1170.  Furthermore, it is settled that a ruling on the admissibility of evidence at a criminal trial is not completely separate from the merits of the case.  See DiBella, 369 U.S. at 131-32; Cogen v. United States, 278 U.S. 221, 227-28 (1929); United States v. Johnson, 690 F.2d 60, 62-63 (3d Cir. 1982), cert. denied, 459 U.S. 1214 (1983).  Instead, such a ruling is "but a step in the criminal case preliminary to the trial thereof," Cogen, 278 U.S. at 227, and may not be reviewed before trial under 28 U.S.C. §1291.[0]  Accordingly, we cannot decide at this time whether the admission of evidence of these acts would violate the Speech or

---

U.S. 1001 (1990) (remanded for reconsideration in light of United States v. Rios, 495 U.S. 257 (1990)).  The language of the overt acts at issue in this case, however, clearly was not so prejudicial that it should have been stricken from the indictment.

[0]Thus, to the extent that the defendant seeks review of other purely evidentiary questions, e.g., whether the district court was correct in ruling that general evidence about how Congress works would not violate the Speech or Debate Clause, see Appellant's Br. at 16, we must likewise refuse review at this time.

Debate Clause.[0] <u>United States v. Carney</u>, 665 F.2d 1064 (D.C. Cir.), <u>cert. denied</u>, 454 U.S. 1081 (1981). <u>See also</u> <u>United States v. Levine</u>, 658 F.2d 113, 125 n.22 (3d Cir. 1981) (collateral estoppel); <u>United States v. Mock</u>, 604 F.2d 336, 337–41 (5th Cir. 1979) (same).

## VII.

For the reasons explained above, we affirm the district court's refusal to dismiss any of the charges in the indictment. To the extent that the defendant challenges the district court's other rulings, we lack jurisdiction to hear these challenges at this time, and his appeal is therefore dismissed.

---

[0] The question discussed above (whether the district court should have barred proof of these acts at trial) may be viewed as conceptually distinct from the question whether the district court should have ruled one way or the other on whether this evidence could be admitted at trial. Under the circumstances here, however, the timing of the district court's ruling on these evidentiary questions is not "jurisprudentially important." This timing did not affect the defendant's appellate rights, <u>cf</u>. Fed. R. Cr. P. 12(f), because even if the district court had denied the defendant's pretrial request for suppression of this evidence he could not have appealed that decision for the reasons explained above. Moreover, it is not apparent from the record of this case that the district court's decision not to issue a pretrial ruling on the relatively narrow evidentiary questions presented by the defendant prejudiced him in any other way.

United States v. McDade, No. 93-1487

SCIRICA, Circuit Judge, concurring and dissenting in part.

I would hold that true legislative oversight falls within the protection
Speech or Debate Clause.  I write separately only because I believe we have jurisdi
to decide whether overt acts in the indictment violate the Speech or Debate Clause
that one of the overt acts here may be privileged.  In all other respects I fully j
majority opinion.

**I.**

The majority holds that jurisdiction to determine whether overt acts chal
on Speech or Debate grounds should be stricken "does not satisfy the requirement th
right at issue in a collateral order appeal be jurisprudentially `important,'"  Maj
at 41, because "striking these overt acts would not require the dismissal of any ch
the indictment."[0]  Id. at 42.  I respectfully disagree.

The Supreme Court recently stated, "[w]hen a policy is embodied in a
constitutional or statutory provision entitling a party to immunity from suit . . .
is little room for the judiciary to gainsay its `importance.'"  Digital Equip. Corp
Desktop Direct, Inc., 62 U.S.L.W. 4457, 4461 (U.S. June 6, 1994). Our cases indicat
issue is jurisprudentially important under the collateral order doctrine if it is '
and unsettled." United States v. Santtini, 963 F.2d 585, 592 (3d Cir. 1992); Praxis
Properties, Inc. v. Colonial Sav. Bank, S.L.A., 947 F.2d 49, 56 (3d Cir. 1991).  Bo
tests appear to be satisfied here. Grounded in our concept of separation of powers,
Helstoski v. Meanor, 442 U.S. 500, 506 (1979) ("guarantees of that Clause are vital

---

[0]As the majority notes, McDade's briefs refer to only two overt acts in the indictm
involving contact with the executive branch. Maj. Op. at 39.

45

important to our system of government . . . ."), the Speech or Debate Clause was wr[itten]

into the Constitution "to protect the integrity of the legislative process by insur[ing]

independence of individual legislators." United States v. Brewster, 408 U.S. 501, 5[07]

(1972).  Since the privilege is part of the "`practical security' for ensuring the

independence of the legislature," United States v. Johnson, 383 U.S. 169, 179 (1966[)],

determining its boundaries requires us to examine the relationship between the thre[e]

branches of government.  It is, therefore, a serious matter and important enough to

overcome judicial policies militating against interlocutory appeals.[0]

The issue is also unsettled.  Neither party has identified a case where a[ny court]

has ruled on whether the Speech or Debate privilege applies to oversight.  Although [the]

Supreme Court has held that certain contacts between Members of Congress and execut[ive]

agencies are not immunized by the Speech or Debate Clause, see Brewster, 408 U.S. a[nd]

Gravel v. United States, 408 U.S. 606, 625 (1972); Johnson, 383 U.S. at 172, it has [not]

held that all contacts with executive agencies are outside the privilege.  As the m[ovant]

has noted, the Court has drawn a distinction between legislative and political acts[, in]

which the former are protected while the latter are not.  Thus, in Brewster, after [the]

Court defined legislative acts as those things "generally done in Congress in relat[ion to]

the business before it," 408 U.S. at 512, it stated that many contacts between Memb[ers and]

executive agencies are not protected because "they are political in nature rather t[han]

legislative . . . ." Id. Therefore, the second part of the "jurisprudentially impor[tant]"

test is satisfied. Cf. Santtini, 963 F.2d at 592 (case of first impression is

jurisprudentially important).

---

[0]The Speech or Debate Clause protects our constitutional separation of powers. See
Brewster, 408 U.S. at 507; see also Robert J. Reinstein and Harvey A. Silverglate, [The]
Legislative Privilege and the Separation of Powers, 86 Harv. L. Rev. 1113, 1139 (19[73])
(Framers "recognized the unique and vital role of this privilege in the system of s[eparation of]
powers.").  Policies militating against interlocutory appeal include restraining ap[pellate]
intervention in tentative decisions and "combin[ing] in one review all stages of th[e]
proceeding that effectively may be reviewed and corrected if and when final judgmen[t]
results." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949).

I agree that striking either overt act would not result in dismissing any

in the indictment, and I recognize the government may decide not to introduce evide

the challenged overt acts at trial, obviating the need to reach this issue.[0] But th

Supreme Court has held a Member cannot be forced to defend against charges which in

legitimate legislative activity. <u>Gravel</u>, 408 U.S. at 616; <u>Dombrowski v. Eastland</u>,

82, 85 (1967) (per curiam).  Therefore, if the indictment recites an overt act that

colorably violates the Clause, it would seem a Member of Congress is entitled to a

pre-trial even though striking the overt act would not result in dismissing any cha

the indictment. <u>See</u> <u>Helstoski</u>, 442 U.S. at 508 ("[I]f a Member `is to avoid <u>exposur</u>

[being questioned for acts done in either House] and thereby enjoy the full protect

the Clause, his . . . challenge to the indictment must be reviewable before . . . e

[to trial] occurs.'") (alterations in original) (quoting <u>Abney v. United States</u>, 43

651, 662 (1977)).[0]

## II.

With respect to the substance of McDade's challenge, it appears one of th

acts may refer to protected activity, and could be stricken from the indictment.  T

Speech or Debate Clause prevents a Member from being questioned outside of Congress

respect to any legislative activity.  Legislative activity comprises any act that i

integral part of the deliberative and communicative processes by which Members part

in committee and House proceedings with respect to the consideration and passage or

rejection of proposed legislation or with respect to other matters which the Consti

---

[0]Indeed, the government appears to concede this possibility. <u>See</u> Government Brief a
("[E]ven if some of McDade's interactions with the executive and military had a par
oversight component such evidence will not be presented by the government.").
[0]Rather than prejudice, <u>see</u> Maj. Op. at 43 n.27, the issue is constitutional privil
Thus, where a colorable claim is made that an overt act in an indictment refers to
privileged activity, inclusion of other, unprotected acts should not cure the
infringement.

places within the jurisdiction of either House." Gravel, 408 U.S. at 625.  True legislative oversight fits within this definition.

Generally speaking, oversight is the way Congress evaluates legislation, the appropriate manner, monitors the operations of executive departments and agenci Properly done, oversight is part of our system of checks and balances. The term cov range of formal and informal activities, of which some may be privileged. See Maj. 38.  The key to identifying privileged oversight lies in the political-legislative distinction. Cf. Brewster, 408 U.S. at 512; Gravel, 408 U.S. at 618 ("the Court has to implement its fundamental purpose of freeing the legislator from executive and j oversight that realistically threatens to control his conduct as a legislator.).

At the extremes the cases will be clear. Compare Gravel, 408 U.S. at 616 have no doubt that Senator Gravel may not be made to answer . . . for the events th occurred at the subcommittee meeting.") with Johnson, 383 U.S. at 172 ("No argument made, nor do we think that it could be successfully contended, that the Speech or D Clause reaches conduct, such as was involved in the attempt to influence the Depart Justice, that is in no wise related to the due functioning of the legislative proce For example, constituent casework including attempts to win government contracts wo be privileged, see Brewster, 408 U.S. at 512, while contacts made as part of a congressional investigation might be, see, e.g., Eastland v. United States Servicem Fund, 421 U.S. 491, 504 (1975)("The power to investigate and to do so through compu process plainly falls within [the legitimate legislative sphere].").

Only one of the challenged overt acts here colorably refers to Speech or privileged material.  Count III, overt Act 17 states "On or about June 7, 1988, def MCDADE, wrote to the Secretary of the Army requesting that the Army delay in making final decision on a possible `second source' for the SINGCARS program."  That lette states, in part:

48

> [The Subcommittee] believed the actual source selection process should result in a selection which minimized technological and financial risk, while emphasizing lower life cycle costs, interoperability, and the benefits of eventual competition. In order to insure source selection in conformance with these criteria, the conferees on the Fiscal Year 1988 Defense Appropriations Act directed the GAO to monitor the entire second source selection process and report its findings to the Committees on Appropriations.
>
> The committee has received interim reports from GAO, and the Army has completed its source selection. However, the GAO's final report will not be completed until July 15th. In the meantime, I am advised the Army intends to award the second source contract by June 10th, well in advance of the final GAO report. While I have no knowledge of any findings by GAO which may cast doubt on the source selection, I believe a contract award in advance of GAO's final review and assessment is ill-timed and ill-advised.

The government contends the letter is evidence of McDade's attempt to steer the awa[rd]

the SINGCARS contract to Grumman corporation, who allegedly was paying McDade bribe[s/]

gratuities. As the ranking minority member on the subcommittee charged with monito[ring]

the SINGCARS program, McDade would likely be involved with reviewing the Army's con[tract]

award.

McDade has made a colorable claim that the letter referred to in overt ac[t]

legitimate oversight. If, as the government argues, McDade was involved in a consp[iracy]

to influence the Army's choice of suppliers, the government would still have the

opportunity to prove its case, but would have to do so without the benefit of privi[leged]

material. Cf. Johnson, 383 U.S. at 185 ("With all references to this aspect of the

conspiracy eliminated, we think the Government should not be precluded from a new t[rial on]

this count, thus wholly purged of elements offensive to the Speech or Debate Clause[.]

By contrast, the government alleges in count I, overt act 16 that "McDade [caused]

a letter to be directed to the Secretary of the Navy warning that the Navy's decisi[on to]

issue a `stop work' order on [United Chem Con's] Sea Shed production would be viewe[d by]

McDade with `extreme gravity.'" McDade states in that letter:

> On the topic of Sea Sheds, my staff is informed by the Director of Strategic Sealift that Sea Sheds produced at the Renovo, Pennsylvania plant in my District were apparently not in dimensional

conformance with applicable specifications.  The Director advised that in a parallel situation he was obliged to issue a stop work order.

I view the issue of a stop order against the Renovo plant with extreme gravity since Sea Sheds production is the town's single industry. . . .  I have asked Ms. Deck [of my Defense committee staff] to ascertain why this highly qualified producer should suddenly be delivering inacceptable [sic] items and report to me on the probable cause.

This letter does not constitute legislative activity, but rather represents unprivi

constituent service. See Brewster, 408 U.S. at 512 (unprotected activities include

performed for constituents).

### III.

I recognize that in some cases it may be difficult to distinguish true ov

from lobbying, and that some future legislator might attempt to shield illegal acti

with the subterfuge of oversight.  But "the risk of such abuse was `the conscious c

of the Framers' buttressed and justified by history." Eastland, 421 U.S. at 510 (qu

Brewster, 408 U.S. at 516).  I would, therefore, require the district court to dete

prior to trial whether the overt acts violate the Clause.