PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

v.

WILLIAM J. JEFFERSON,

                *Defendant-Appellant.*

No. 08-4215

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

                *Amicus Supporting Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, Senior District Judge.
(1:07-cr-00209-TSE-1)

Argued: September 24, 2008

Decided: November 12, 2008

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Judge Duncan joined.

## COUNSEL

**ARGUED**: Robert P. Trout, TROUT CACHERIS, P.L.L.C., Washington, D.C., for Appellant. Mark D. Lytle, OFFICE OF

THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Amy Berman Jackson, Gloria B. Solomon, TROUT CACHERIS, P.L.L.C., Washington, D.C., for Appellant. Chuck Rosenberg, United States Attorney, David B. Goodhand, Assistant United States Attorney, Rebeca H. Bellows, Assistant United States Attorney, Charles E. Duross, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. Melanie Sloan, Anne Weismann, CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, Washington, D.C., for Amicus Supporting Appellee.

---

**OPINION**

KING, Circuit Judge:

By way of this interlocutory appeal, Congressman William J. Jefferson seeks relief from the district court's denial of his motion to dismiss a pending indictment (the "Indictment"). *See United States v. Jefferson*, 534 F. Supp. 2d 645 (E.D. Va. 2008) (the "Opinion"). Jefferson contends — as the essential premise of his appeal — that the grand jury was improperly presented with evidence of his legislative acts and that such evidence was relevant to its decision to indict. He asserts that the Indictment thus contravenes the legislative immunity provided to him by the Speech or Debate Clause of the Constitution, *see* U.S. Const. art. I, § 6, cl. 1, and must be dismissed. As explained below, we reject this contention and affirm.

I.

A.

Congressman Jefferson, who represents Louisiana's Second Congressional District, was indicted on June 4, 2007, by a

grand jury in the Eastern District of Virginia. The Indictment charges Jefferson with participating in multiple schemes and related offenses. In such alleged schemes, Jefferson solicited and received bribes from various persons and business entities. In exchange, he promoted their products and services to government officials in Africa. Specifically, the Indictment alleges two separate conspiracy offenses, each in violation of 18 U.S.C. § 371, plus fourteen substantive offenses.[1]

The facts alleged in the Indictment reflect seven separate bribery schemes. In its Opinion of February 13, 2008, declining to dismiss the Indictment, the district court summarized the various bribery schemes. We are satisfied to adopt that summary, which is as follows:

> First, the indictment alleges that defendant solicited bribes from Vernon Jackson, president of iGate, Incorporated (iGate), a Louisville, Kentucky-based telecommunications firm, to promote iGate's telecommunications technology in certain African countries. In return for payments of money and iGate shares to the ANJ Group, L.L.C. (ANJ), a Louisiana limited liability company ostensibly controlled and managed by defendant's spouse, Andrea Jefferson, defendant allegedly sent letters on official letterhead, conducted official travel, and met with foreign government officials to promote the use of iGate's technology.

---

[1]The fourteen substantive offenses in the Indictment are as follows: two counts for solicitation of bribes, in violation of 18 U.S.C. § 201(b)(2)(A); six counts of wire fraud, in contravention of 18 U.S.C. §§ 1343, 1346; a single charge of violating the Foreign Corrupt Practices Act, specifically 15 U.S.C. § 78dd-2(a); three counts of money laundering, in violation of 18 U.S.C. § 1957; an obstruction-of-justice charge, under 18 U.S.C. § 1512(c)(1); and one count of racketeering, in contravention of 18 U.S.C. § 1962(c).

Second, the indictment alleges that defendant solicited bribes from Netlink Digital Television (Netlink), a Nigerian corporation that was pursuing a telecommunications venture in Nigeria and elsewhere in Africa. In return for a share of revenue, stocks, and fees from Netlink, defendant allegedly performed various official acts including meeting with Nigerian government officials to promote Netlink's business.

Third, the indictment alleges that defendant induced Lori Mody, an Alexandria, Virginia-based businesswoman, to finance a telecommunications project in Africa using iGate's technology. Defendant allegedly solicited bribes from Mody in the form of shares in W2-IBBS, a Nigerian company formed by Mody to pursue the Nigerian telecommunications project, as well as money to be paid to defendant's family members. In return for these bribes, defendant allegedly used his office to promote W2-IBBS's interests in Nigeria and elsewhere in Africa. Defendant also allegedly solicited bribes in the form of shares in IBBS, a Ghanian company formed by Mody to pursue the telecommunications project in that country. In return, defendant allegedly sent letters on official letterhead, conducted official travel to Ghana, and met with Ghanian government officials to promote Mody's, IBBS's, and W2-IBBS's interests in Ghana and elsewhere in Africa. The indictment also alleges that to advance this bribery scheme, defendant introduced Mody to officials of the Export-Import Bank of the United States (Ex-Im Bank) to assist Mody in securing financial assistance. Defendant and Mody also allegedly discussed bribing Nigerian government officials to facilitate the W2-IBBS telecommunications project. It is further alleged that defendant then met with and offered to bribe Atiku Abubakar, who was then the Vice

President of Nigeria. And, according to the indictment, defendant received $ 100,000 in cash from Mody for the purpose of paying Abubakar a bribe.

Fourth, the indictment alleges that defendant solicited and received bribes from businessman George Knost and from Arkel International, Inc., Arkel Sugar, Inc., and Arkel Oil and Gas, Inc. In return for the bribes, defendant allegedly performed various official acts, including meeting with officials of the Ex-Im Bank to promote an Arkel Sugar project in Nigeria and meeting with Nigerian government officials to promote the interests of Arkel Oil and Gas.

Fifth, the indictment alleges that defendant solicited and received bribes from businessman John Melton and from TDC Energy Overseas, Inc. (TDC). In return for these bribes, defendant allegedly performed various official acts, including meeting with Nigerian government officials to promote TDC's interests in Nigeria and meeting with officials of the United States Trade Development Agency (USTDA) to encourage the USTDA to grant TDC financial assistance for TDC's Nigerian oil field project.

Sixth, the indictment alleges that defendant, through an intermediary, lobbyist James Creaghan, solicited bribes from businesswoman Noreen Wilson in return for which defendant used his office to assist in resolving a dispute over oil exploration rights in the waters off Sao Tome and Principe. It is alleged that defendant received payments from Wilson, via Creaghan, either directly or through a nominee company.

Seventh, the indictment alleges that defendant solicited and received bribes from Life Energy Tech-

nology Holdings (LETH), a Delaware corporation engaged in the business of manufacturing and distributing energy-related technology. In return for these bribes, it is alleged that defendant traveled in his official capacity to Nigeria, Equatorial Guinea, Cameroon, and Sao Tome and Principe and met with government officials in those countries to promote LETH's technology to those government officials.

*United States v. Jefferson*, 534 F. Supp. 2d 645, 647-48 (E.D. Va. 2008).

B.

On September 7, 2007, three months after the grand jury returned the Indictment, Jefferson filed a motion requesting that the district court review the grand jury materials and dismiss the Indictment (the "Motion"). The Motion was predicated upon Jefferson's belief and contention that the grand jury had considered testimony that contravened his rights under the Speech or Debate Clause.[2]

More specifically, according to the Motion, Jefferson was concerned that the grand jury may have considered evidence from Brett Pfeffer, a former Jefferson staffer who had pleaded guilty to related charges and was cooperating with the prosecution. After the prosecution provided Jefferson with recorded statements involving Pfeffer and another cooperating witness, Jefferson surmised that Pfeffer was "extensively involved in the activities underlying the indictment." J.A. 124.[3] Jefferson

---

[2]The Speech or Debate Clause provides, "[F]or any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. 1, § 6, cl. 1. The Clause serves to immunize a member of Congress from being questioned about his legislative acts. *See Gravel v. United States*, 408 U.S. 606, 616 (1972).

[3]Citations herein to "J.A. _" refer to the Joint Appendix filed by the parties in this appeal.

thus suspected that Pfeffer had testified before the grand jury, that his testimony referenced Jefferson's legislative activities, that Pfeffer's recorded statements had been presented to the grand jury, and that other current or former staffers had likewise provided grand jury testimony regarding Jefferson's legislative activities. As a result, Jefferson requested that all grand jury materials be provided to his lawyers so they could assess whether evidence of his privileged legislative acts had been presented to the grand jury. He also requested the district court to review and assess *in camera* all grand jury transcripts. In that respect, he asserted that, if evidence relating to his legislative acts had been so presented, and if such acts were relevant to the grand jury's decision to indict, the court was obliged to dismiss the Indictment.

In response to the Motion, the prosecution denied that the grand jury had heard or considered any Speech or Debate Clause material. Nevertheless, "[o]ut of an abundance of caution and as a result of the claims set forth in the defendant's Motion," the prosecution took steps to assuage Jefferson's concerns. J.A. 151. First, the United States Attorney informed Jefferson that Pfeffer had not testified before the grand jury, and that the prosecution had not presented Pfeffer's recorded statements to the grand jury. Second, the prosecutors made available to Jefferson more than 600 pages of grand jury transcripts — specifically, testimony provided by his current and former congressional staffers.[4]

Jefferson's lawyers then reviewed and analyzed the grand jury transcripts made available to them. After so doing, Jefferson identified three excerpts thereof that, in his view, violated the Speech or Debate Clause (collectively, the "Excerpts"). The Excerpts relate to the testimony of three grand jury wit-

---

[4]In disclosing these portions of the grand jury record to Jefferson's lawyers, the prosecution nevertheless asserted that it did not "believe that any of these measures were mandated by any governing legal authority." J.A. 151.

nesses: Lionel Collins, Jefferson's former chief of staff (the "Collins Excerpt"); Melvin Spence, a former Jefferson staffer (the "Spence Excerpt"); and Stephanie Butler, a current Jefferson staffer (the "Butler Excerpt"). The Excerpts are summarized as follows:

- *The Collins Excerpt* — In discussing Jefferson's relationships with certain African leaders, Collins testified:

  > [T]hey were considering legislation dealing with the Africa Growth and Opportunity Act, a trade bill dealing with Africa. Congressman Jefferson was very instrumental in moving the legislation through the Congress, and it was voted on by both the House and Senate side. It was passed. Congressman Jefferson had a lot of African ambassadors involved in the legislation and so forth, and the legislation was very instrumental to the continent of Africa.

  J.A. 160.

- *The Spence Excerpt* — In response to a prosecutor's question concerning whether Jefferson's constituents viewed him as a leader in a particular geographical area of trade, Spence responded, "Africa would be the closest thing. Like AGOA, the Africa Growth and Opportunity Act, which is a preferential trade bill." J.A. 161.

- *The Butler Excerpt* — In prefacing a question to Butler, the prosecutor remarked, "The congressman, through his activities in Congress, has a special knowledge of West Africa, you know, countries in Subsaharan Africa, Gulf of Guinea area." J.A. 161.

Jefferson asserted to the district court that the Excerpts permitted the grand jury to consider his legislative activities in its decision to indict, thus contravening the Speech or Debate Clause. More specifically, he contended that the Excerpts "demonstrate that the prosecution pursued the theory that Mr. Jefferson developed special expertise and contacts *through his particular legislative work*, which he then allegedly used to assist private business in return for things of value." J.A. 161-62.

## C.

On November 30, 2007, the district court heard argument concerning the Speech or Debate Clause issue and ruled on aspects of the Motion. By its bench ruling, the court first declined Jefferson's request for disclosure of all grand jury transcripts to defense counsel. And, by an order of the same day, the court denied Jefferson's request that it review *in camera* the entire grand jury record. The court agreed, however, to conduct a more limited review and assess *in camera* those portions of the grand jury record that the prosecution had not provided to Jefferson.[5]

By its Opinion of February 13, 2008, the district court declined to dismiss the Indictment. Importantly, the Opinion began by recognizing that, "[a]lthough courts are authorized

---

[5]As the district court later explained in its Opinion of February 13, 2008, the prosecution ultimately disclosed the entire available grand jury record — partially to Jefferson and the balance thereof to the court. The record was partially provided to Jefferson when the prosecution permitted him to examine the testimony of his current and former staffers. The balance of the available grand jury record — those portions not disclosed to Jefferson — was presented to the court for *in camera* review. *See Jefferson*, 534 F. Supp. 2d at 649. As the Opinion explained, the materials provided to Jefferson and the court did not include any arguments or instructions offered to the grand jury by the prosecutors. Although Jefferson sought *in camera* review of such materials, the arguments and instructions had not been transcribed and were not available. *See id.* at 649 n.7.

to disclose grand jury matters to a 'defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury,' no such ground was shown here." *Jefferson*, 534 F. Supp. 2d at 649 (quoting Fed. R. Crim. P. 6(e)(3)(E)(ii)). The Opinion then explained why an *in camera* review of the entire grand jury record was not warranted. It emphasized that "*in camera* inspection of grand jury matters is required only on a showing that there is a reason to believe Speech or Debate materials were presented to the grand jury." *Id.* Notwithstanding Jefferson's failure to make such a showing, the court agreed to review and assess the Excerpts and the balance of the available grand jury record "because the Speech or Debate Clause protection afforded legislators is so important, and out of an abundance of caution." *Id.*

The Opinion then proceeded to analyze and explain the district court's view of the scope of the Speech or Debate Clause. Relying on *United States v. Brewster*, 408 U.S. 501 (1972), the Supreme Court's leading decision with respect to evidentiary challenges under the Speech or Debate Clause, the district court properly observed that

> it is well settled that the government may not introduce evidence of a Member's legislative acts to prove an element of a criminal charge. But the government may rely on acts "casually or incidentally related to legislative affairs but not part of the legislative process itself." Put simply, the Speech or Debate Clause is not a license to commit crime.

*Jefferson*, 534 F. Supp. 2d at 652 (quoting *Brewster*, 408 U.S. at 528). With these principles in mind, the court explained that it was keeping "an eye toward detecting whether activities integral to defendant's participation in the consideration and passage of legislation played a role in obtaining the indictment." *Id.*

For multiple reasons, the district court concluded that neither the Indictment nor the grand jury proceedings infringed the Speech or Debate Clause. First, in addressing the Indictment, the court concluded that "the schemes and facts alleged therein . . . do not concern defendant's involvement in the consideration and passage or rejection of legislation." *Jefferson*, 534 F. Supp. 2d at 652. The Indictment alleged that Jefferson met with government officials, conducted official travel, and used his congressional staff to promote business ventures in exchange for bribes. These allegations, the court concluded, focus exclusively on nonlegislative acts that do not give rise to a valid Speech or Debate Clause claim. *See id.*

Next, the district court analyzed the portions of the grand jury record that the prosecution had provided to it for *in camera* review. Although the record "contain[s] references to defendant's status as a congressman and as a member of various congressional committees," the court determined that those references did not contravene Jefferson's legislative immunity. *Jefferson*, 534 F. Supp. 2d at 652. It is well-recognized, the court explained, that "mere reference" to a congressman's status "does not offend the Clause." *Id.* As a result, the portion of the grand jury record that the prosecution supplied to the court for *in camera* review was also unobjectionable under the Speech or Debate Clause. *See id.*

Finally, the district court concluded that none of the Excerpts contravened the Speech or Debate Clause. The court first addressed the Butler Excerpt, determining that although the prosecutor had referred to Jefferson's "activities in Congress," such references do "not violate the Speech or Debate Clause where, as here, it is simply part of a more general inquiry into matters that are incidentally related to a congressman's legislative activities." *Jefferson*, 534 F. Supp. 2d at 653. Relying on *Brewster*, the court concluded that the prosecutor had not questioned Jefferson's "involvement in the con-

sideration and passage or rejection of any legislation," but rather had "simply relate[d] to [his] influence and status." *Id.*

The district court then assessed the Spence Excerpt and concluded that it was likewise unobjectionable. The court explained that Spence's grand jury reference to the African Growth and Opportunity Act (the "AGOA") was unrelated to Jefferson's "involvement in the consideration and passage of the Act." *Jefferson*, 534 F. Supp. 2d at 653. Jefferson had contended that the Spence Excerpt violated the Speech or Debate Clause because it expressly mentioned a piece of legislation, but the court disagreed. The Spence Excerpt merely referenced Jefferson's status, which "might induce persons to offer him bribes for official acts." *Id.* As a result, the court concluded that the Spence Excerpt, like the Butler Excerpt, did not implicate or contravene the Speech or Debate Clause. *See id.*

Finally, the Opinion analyzed the propriety of the Collins Excerpt, which, according to Jefferson, violated the Speech or Debate Clause by referring to Jefferson's participation in "moving the legislation through the Congress." *Jefferson*, 534 F. Supp. 2d at 654. The district court rejected this contention as well, for three reasons. First, Collins's reference to Jefferson's actions in passing the AGOA was "neither material nor relevant" to the allegations of the Indictment. *Id.* Second, the court concluded that, because there were "independent, non-privileged grounds sustaining the charges in the indictment," simply referencing Jefferson's role in passing the legislation did not render the Indictment defective. *Id.* Third, the court emphasized that Collins's statement was unprompted, in that the prosecutor was not inquiring into Jefferson's legislative acts and did not pose any follow-up questions concerning such acts. *See id.* The court thus concluded that neither the Indictment, nor the portion of the grand jury record submitted for *in camera* review, nor the Excerpts, violated the Speech or Debate Clause. *See id.* Accordingly, the court refused to dismiss the Indictment.

On February 20, 2008, seeking pretrial appellate review of his Speech or Debate Clause claim and the district court's refusal to dismiss on that basis, Jefferson filed his notice of appeal. As explained below, we possess jurisdiction under the collateral-order doctrine.

## II.

We are always obligated to ascertain whether we possess jurisdiction of an appeal, an issue we assess de novo. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). We also review de novo a district court's denial of a claim that an indictment should be dismissed as violative of the Speech or Debate Clause. *See Minpeco, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988); *see also United States v. Dowdy*, 479 F.2d 213, 221 (4th Cir. 1972). We review for abuse of discretion any issues arising from a trial court's rulings on the disclosure of grand jury materials. *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959); *United States v. Anderson*, 481 F.2d 685, 692 (4th Cir. 1973).

## III.

## A.

As a settled proposition, a court of appeals is only empowered to review a district court's "final" decisions. 28 U.S.C. § 1291. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). Interlocutory appellate review of a non-final decision of a district court is highly disfavored, particularly in a criminal case. *See Berman v. United States*, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."); *see also Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) ("In criminal

cases [the final-judgment rule] prohibits appellate review until after conviction and sentence.").

Acknowledging the absence of a final judgment, Jefferson relies on the collateral-order doctrine for jurisdiction in this appeal. This doctrine authorizes a court of appeals to review a non-final decision of a district court when three requirements are satisfied. First, the issue sought to be appealed must conclusively determine the question; second, the question must constitute an important issue independent of the merits of the controversy; and third, the issue must be effectively unreviewable after trial. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-46 (1949).

Of importance here, the Supreme Court "has found only three types of pretrial orders in criminal prosecutions to meet the requirements [of the collateral-order exception]. Each type involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Flanagan v. United States*, 465 U.S. 259, 265-66 (1984) (internal quotation marks omitted). The rights that have been deemed sufficient for a collateral-order appeal in a criminal proceeding are (1) the right to pretrial bail, *Stack v. Boyle*, 342 U.S. 1, 4 (1951); (2) the right not to be placed in double jeopardy, *Abney v. United States*, 431 U.S. 651, 659-60 (1977); and (3), as here, the right of a Member of Congress to avoid questioning based on the Speech or Debate Clause, *Helstoski v. Meanor*, 442 U.S. 500, 506-07 (1979).

Nearly thirty years ago, in *Helstoski*, the Supreme Court concluded that an interlocutory appeal from a district court's refusal to dismiss an indictment for an alleged Speech or Debate Clause violation satisfies the collateral-order doctrine. *See* 442 U.S. at 506-08. As the Court explained, the denial of such a motion is, first of all, "'a complete, formal and, in the trial court, final rejection'" of the Speech or Debate Clause claim. *Id.* at 506 (quoting *Abney*, 431 U.S. at 659). Second,

such a claim is "'collateral to, and separable from, the principal issue at the accused's impending criminal trial, i.e., whether or not the accused is guilty of the offense charged.'" *Id.* at 507 (quoting *Abney*, 431 U.S. at 659). Finally, in the absence of such an appeal, the Clause's protections would be lost, because "the Speech or Debate Clause was designed to protect Congressmen 'not only from the consequences of litigation's results but also from the burdens of defending themselves.'" *Id.* at 508 (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)). We thus possess jurisdiction, pursuant to the collateral-order doctrine, to review the denial of Jefferson's request to dismiss the Indictment.

## B.

In this appeal, Jefferson contends that the district court erred in refusing to dismiss the Indictment.[6] In so contending, he maintains that the Speech or Debate Clause provides legislators with greater protection than the court recognized. Furthermore, Jefferson asserts that the court erred in not requiring the prosecutors to submit for *in camera* review the transcripts of any arguments or instructions the prosecutors may have given the grand jury. *See supra* note 5. These transcripts, Jefferson argues, could reveal additional evidence that Speech or Debate Clause materials were presented to the grand jury. Jefferson requests that we direct the dismissal of the Indictment,

---

[6]There is some ambiguity regarding the scope of Jefferson's dismissal request. In his Motion, he "move[d] to dismiss all counts of the indictment obtained through use of privileged materials." J.A. 113. He later asserted that "all counts in the indictment that are based on bribery related schemes" should be dismissed. *Id.* at 159. In its Opinion, the district court observed that Jefferson had moved "to dismiss the indictment." *Jefferson*, 534 F. Supp. 2d at 654-55. In his brief on appeal, Jefferson again contends "[t]he question in this case is whether the bribery-related counts in the indictment should be dismissed." Br. of Appellant 17. Jefferson does not specify which counts he deems to be "bribery-related," nor does he identify those counts, if any, he accepts as valid. In these circumstances, we construe this appeal as challenging the Indictment in its entirety.

or, in the alternative, that we review the grand jury transcripts to search for Speech or Debate Clause infractions. At least, according to Jefferson, we should vacate the court's November 30, 2007 order and remand for an *in camera* assessment of any arguments or instructions offered by the prosecutors that may constitute Speech or Debate Clause violations.

In resolving this appeal, we first outline the scope of the protection that the Speech or Debate Clause affords a legislator implicated in a criminal proceeding. We then explain that Jefferson is not entitled to any further assessment of the grand jury materials, and that the district court did not err in declining to dismiss the Indictment.

1.

The Speech or Debate Clause has a long history and is generally accepted as traceable to the English Bill of Rights of 1689. *See* Robert J. Reinstein & Harvey A. Silverglate, *Legislative Privilege and the Separation of Powers*, 86 Harv. L. Rev. 1113, 1120-35 (1973) (detailing history of legislative privilege); *see also* Joseph Story, *Commentaries on the Constitution* 309-10 (1833). Put simply, the Clause provides legislators with absolute immunity for their legislative activities, relieving them from defending those actions in court. *See Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975); *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880).

The Supreme Court, however, has recognized that there are limits to the protection afforded legislators by the Speech or Debate Clause. In 1972, the Court explained that the Clause prohibits "inquiry only into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 512 (1972). The Clause does not, however, bar an "inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Id.* at 528. Importantly, the Court

has consistently emphasized that legislative immunity does not shield a congressman or senator who has sought to improperly influence an executive department or agency. *See United States v. Johnson*, 383 U.S. 169, 172 (1966) (recognizing that effort to influence Department of Justice is not legislative activity); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 121 n.10, 131 (1979) (observing that efforts to influence executive agencies are not privileged).

In *Brewster*, the Supreme Court carefully surveyed the contours of the Speech or Debate Clause, concluding that the Clause does not prevent the prosecution from introducing, in a bribery proceeding, relevant evidence of a legislator's status. *See* 408 U.S. at 512. The Court explained that "the Speech or Debate Clause prohibits inquiry only into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts." *Id.* In order to preserve "the historic balance of the three co-equal branches of Government," Chief Justice Burger explained, the privilege must have limits. *Id.* at 508. "The Speech or Debate Clause," he observed, "has been limited to an act which was clearly a part of the legislative process — the *due* functioning of the process." *Id.* at 515-16. It is thus apparent that nonlegislative acts, such as making appointments with agencies, assisting constituents in securing government contracts, preparing newsletters or news releases, or making speeches outside Congress, are within the scope of an appropriate inquiry. *See id.* Most importantly, the acceptance of a bribe, as the Court emphasized in *Brewster*, is never a legislative act. *See id.* at 526.

In this proceeding, Congressman Jefferson contends that the absolute immunity conferred by the Speech or Debate Clause bars the prosecution from presenting any evidence to the grand jury relating to his legislative activities. Under this interpretation of the Clause, *any* mention of Speech or Debate Clause material in a grand jury proceeding mandates the dismissal of all charged offenses that relate to such evidence. For

this contention, Jefferson relies primarily on the Eleventh Circuit's decision in *United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992). Jefferson characterizes *Swindall* as holding that all charges in an indictment must be dismissed if "the legislative acts were relevant to the decision to indict." Br. of Appellant 29. The district court erred, Jefferson contends, because it failed to utilize this "relevancy" test in assessing the grand jury record. The Excerpts related to his involvement in legislation, Jefferson maintains, and were at the heart of the alleged bribery schemes. As such, they were relevant to the offenses alleged, and their presentation to the grand jury warranted dismissal of the Indictment.

In *Swindall*, the Eleventh Circuit assessed the convictions of a former congressman for making false statements to a grand jury investigating a money-laundering scheme. When the prosecutor questioned Swindall before the grand jury about his involvement in the scheme, Swindall denied knowing that his activities were illegal. The prosecutor then inquired about Swindall's work on the Banking and Judiciary Committees, in an effort to use his committee involvement to show that Swindall knew of the relevant statutes. *See Swindall*, 971 F.2d at 1539-42. Following his grand jury appearance, Swindall was indicted on ten counts of perjury. He unsuccessfully sought dismissal of the charges and was convicted on all counts. Swindall appealed, claiming that the prosecution had violated the Speech or Debate Clause by relying on legislative acts to prove an element of the perjury offenses. The court of appeals reversed on three of the ten counts, ruling that those charges questioned Swindall's congressional activities. *See id.* at 1542. Such activities were legislative acts, which contravened the Speech or Debate Clause. *See id.* at 1543. It concluded that the Speech or Debate Clause barred the prosecution from using Swindall's legislative acts to prove any element of the alleged crimes. *See id.* at 1549.

Put succinctly, Jefferson's reliance on the *Swindall* decision is misplaced. Swindall was being prosecuted for perjury

before the grand jury, and, at trial, the government introduced his committee memberships to prove that he had lied before the grand jury.[7] The government thus used his legislative activities to prove an element of the perjury offenses. Jefferson has not contended that the Indictment references his legislative acts, or that a successful prosecution will require the government to prove such acts. In fact, he acknowledges that "[t]he indictment does not allege that he solicited payment in exchange for a decision on any pending bill, for an earmark or appropriation, or for action in a congressional investigation." Br. of Appellant 19. Jefferson maintains, however, that staffer testimony regarding his legislative activities renders the Indictment constitutionally defective. As explained below, we disagree.

2.

The principle of grand jury independence is firmly rooted and jealously protected in our federal system of justice. Because it is an independent investigative body, the federal courts have consistently accorded a grand jury "wide latitude to inquire into violations of criminal law." *United States v. Calandra*, 414 U.S. 338, 343 (1974). As the Supreme Court has explained, a grand jury

> is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual

---

[7]In *Swindall*, the government acknowledged that the defendant's legislative activities were "critical" to the prosecution, explaining that "[u]nlike any other citizen in the United States, [Swindall] would have a unique and specific knowledge in the understanding of the illegality of the circumvention of the currency transaction reports because of his former status as a member of the House Judiciary and Banking Committee." *Swindall*, 971 F.2d at 1540.

> will be found properly subject to an accusation of
> crime.

*Blair v. United States*, 250 U.S. 273, 282 (1919). Under con-
trolling precedent, a facially valid indictment is not subject to
dismissal simply because the grand jury may have considered
improper evidence, or because it was presented with informa-
tion or evidence that may contravene a constitutional privi-
lege. *See Costello v. United States*, 350 U.S. 359, 363 (1956);
*see also Calandra*, 414 U.S. at 344-345 (holding exclusionary
rule inapplicable to grand jury proceedings); *Lawn v. United
States*, 355 U.S. 339, 349-50 (1958) (concluding Fifth
Amendment not violated when grand jury witnesses not
advised of rights); *United States v. Strouse*, 286 F.3d 767, 772
(5th Cir. 2002) (holding that grand jury perjury, not sponsored
by prosecution, provides no basis for dismissal of indictment).

In its *Costello* decision in 1956, the Supreme Court held
that an otherwise valid indictment is not rendered invalid
because it was predicated solely on hearsay evidence. *See* 350
U.S. at 363-64. In that case, Costello challenged his indict-
ment for tax evasion, asserting that the only evidence heard
and considered by the grand jury was inadmissible hearsay
from the tax investigators. *See id.* at 359-61. Explaining that
"neither the Fifth Amendment nor any other constitutional
provision prescribes the kind of evidence upon which grand
juries must act," the Court rejected Costello's challenge. *Id.*
at 362. Writing for the Court, Justice Black made a compre-
hensive review of the grand jury's history in England and the
United States. Recognizing that the Founders intended our
system to operate in a manner similar to the grand jury in
England, he explained that "[t]he basic purpose of the English
grand jury was to provide a fair method for instituting crimi-
nal proceedings against persons believed to have committed
crimes." *Id.* As a result, the grand jury stands apart from other
functions of government: "[I]n this country as in England of
old," the Court observed, "the grand jury has convened as a
body of laymen, free from technical rules, acting in secret,

pledged to indict no one because of prejudice and to free no one because of special favor." *Id.* In the context of this historical perspective, Justice Black reasoned that authorizing defendants to pursue pretrial challenges to grand jury procedures would serve to unduly delay criminal proceedings and foster abuse of the system. *See id.* at 363. As a result, when an indictment is facially valid and the grand jury was "legally constituted and unbiased," the competency and adequacy of the evidence presented to it is not subject to challenge. *Id.*

We have consistently adhered to *Costello*'s guiding and settled principles. For example, in *United States v. Johnson*, 419 F.2d 56 (4th Cir. 1969), in a context not unlike that presented here, we concluded that the *Costello* mandate barred us from looking behind an indictment to assess whether the grand jury had considered privileged legislative materials. Johnson was a congressman who had been indicted under a federal conflict-of-interest statute. After he was convicted, Johnson appealed successfully, but was again convicted on retrial. In his second appeal, Johnson contended that his convictions were "invalid because the grand jury that returned them heard evidence concerning his Congressional speech." *Johnson*, 419 F.2d at 58. We rejected this contention, relying on the Supreme Court precedents that severely restrict any judicial inquiry into grand jury matters. *See id.* (citing *United States v. Blue*, 384 U.S. 251, 255 n.3 (1966); *Lawn v. United States*, 355 U.S. 339 (1958); *Costello v. United States*, 350 U.S. 359 (1956); *Holt v. United States*, 218 U.S. 245 (1910)). In so doing, we emphasized that a grand jury will not be deemed biased solely because it heard some evidence relating to congressional speech. As Judge Butzner explained, the "[b]ias of a grand jury may be manifested in several ways, but it has not been held to arise from the receipt of incompetent or constitutionally impermissible evidence." *Id.* Bounded by such precedent, we are likewise not entitled to review the grand jury record in Jefferson's case — the Indictment simply does not question any legislative acts.

Jefferson maintains, however, that our decision in *United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973), permits us to look behind an Indictment when the Speech or Debate Clause may be implicated. In *Dowdy*, Judge Winter observed that "it may be necessary to go beyond the indictment to obtain the full meaning of what appear facially to be perfectly proper allegations." *Dowdy*, 479 F.2d at 223. Although such language may initially appear to support Jefferson's contention, it actually fails to do so.

*Dowdy* involved a post-trial appeal by a Congressman who had accepted money from a Washington-area construction company in exchange for his intervention in a criminal investigation. Dowdy was indicted and convicted on two conspiracy charges, a bribery offense, and five counts of perjury before a grand jury. *See Dowdy*, 479 F.2d at 216-17. On appeal, he alleged that "various counts of the indictment and a substantial part of the government's proof offered thereunder" contravened the Speech or Debate Clause. *Id.* at 222. Our panel concluded that the indictment, when "read standing alone," was largely unobjectionable. *Id.* It admonished, however, that "the validity of an indictment must be determined in the context of the proof which is offered to sustain it, or in the context of facts adduced on a motion to dismiss it." *Id.* at 223. It was in this context that we referred to "go[ing] beyond the indictment," observing that

> we think that the speech or debate clause constitutes a limitation on what may be alleged as well as what may be proved, although *it may be necessary to go beyond the indictment to obtain the full meaning of what appear facially to be perfectly proper allegations.*

*Id.* (emphasis added). In other words, we recognized that it may be appropriate to look beyond a facially valid indictment to ascertain whether Speech or Debate Clause material is necessary to prove the charges. Concluding that the trial evidence

used to obtain Dowdy's convictions infringed the Speech or Debate Clause, we vacated his convictions on five of the indictment's eight counts. *See id.* at 217.

Importantly, *Dowdy* did not purport to circumvent *Costello* and its progeny, or to rule that a court should look behind an otherwise valid indictment for Speech or Debate Clause materials that may have been presented to a grand jury. Indeed, *Dowdy* was a post-trial appeal, and we had no reason to consider *Costello*. *Dowdy* simply recognized that a court may examine the relevant trial evidence or the facts adduced in connection with a motion to dismiss to assess whether a facially valid indictment nonetheless contravenes the Speech or Debate Clause. What we found offensive in *Dowdy* was not that the grand jury may have considered legislative acts, but that proof of such acts was actually presented *at trial*. *See* 479 F.2d at 223. *Dowdy* is thus not controlling where, as here, there is no allegation that proof of the indictment requires the presentation at trial of Speech or Debate Clause materials.[8]

In these circumstances, we are satisfied that the district court, in conducting the pretrial proceedings, accorded Congressman Jefferson every substantive and procedural protection to which he was entitled. As the court explained in its Opinion, it decided to analyze the Excerpts and review *in camera* certain grand jury materials "because the Speech or Debate Clause protection afforded legislators is so important, and *out of an abundance of caution*." *United States v. Jefferson*, 534 F. Supp. 2d 645, 649 (E.D. Va. 2008) (emphasis added). After conducting its review, the court concluded that the grand jury had not considered any Speech or Debate

---

[8]At least two of our sister circuits have observed, in *dicta*, that a *pervasive* violation of the Speech or Debate Clause before a grand jury might be used to invalidate an indictment. *See United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C. Cir. 1995); *United States v. Helstoski*, 635 F.2d 200, 205 (3d Cir. 1980). Jefferson has made no such assertion, however, and we have no reason to reach such an issue.

Clause material. *See id.* at 654. The court acknowledged, however — and we agree — that the controlling authorities did not compel such a comprehensive review. *See id.* at 649. Under the facts of this case, however, the court's decision to act as it did in assessing Jefferson's Speech or Debate Clause Claim was within its discretion and entirely appropriate. With the foregoing principles in mind, we are content to reject Jefferson's request for further review of the grand jury record, and we affirm the district court's refusal to dismiss the Indictment.

## IV.

Pursuant to the foregoing, the Opinion of the district court is affirmed.

*AFFIRMED*