**UNITED STATES of America**

v.

**William J. JEFFERSON.**

No. 1:07cr209.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 27, 2009.

Mark Lytle, Rebeca H. Bellows, United States Attorney's Office, Alexandria, VA, Charles E. Duross, U.S. Department of Justice, Washington, DC, for United States of America.

Amy Berman Jackson, Robert Powel Trout, Gloria B. Solomon, Trout Cacheris PLLC, Washington, DC, for William J. Jefferson.

## ORDER

T.S. ELLIS, III, District Judge.

In this multi-count bribery, RICO, money laundering, and honest services wire fraud prosecution of a now-former Member of Congress,[1] defendant seeks to exclude the proposed testimony of the government's expert, former Congressman Matthew F. McHugh. The government forecasts that Mr. McHugh will offer background and opinion testimony with respect to certain factual predicates—specifically, the customary activities and settled practices of congressional members—relevant to the bribery-related charges in this case.[2]

1. Defendant represented Louisiana's 2nd Congressional District from 1991 until he left office following his defeat in a 2008 bid for reelection.

2. The ninety-four page, sixteen-count indictment (the "Indictment") includes eleven bribery-related counts, namely (i) two counts alleging conspiracies between defendant and others to commit various crimes, including bribery; (ii) two substantive bribery counts; (iii) six counts alleging wire fraud predicated on, *inter alia*, bribery offenses; and (iv) one racketeering count alleging approximately twelve racketeering acts predicated on, inter alia, bribery offenses. The Indictment's allegations are set forth in greater detail in *United States v. Jefferson,* — F.Supp.2d —, ——-——, 2009 WL 1491323, at *1–2 (E.D.Va. May 22, 2009); *United States v. Jefferson,* 562 F.Supp.2d 687, 689–90 (E.D.Va. 2008); and *United States v. Jefferson,* 534 F.Supp.2d 645, 646–48 (E.D.Va.), *aff'd,* 546

Defendant has filed a motion to exclude Mr. McHugh's proposed testimony on two grounds, namely (i) that the proposed testimony is inadmissible under Rules 702, 402, and 403, Fed.R.Evid., because Mr. McHugh's forecasted opinions merely state legal conclusions and will not assist the jury; and (ii) that certain portions of Mr. McHugh's proposed testimony are barred by the Speech or Debate Clause of Art. I, § 6 of the U.S. Constitution.

Defendant's motion was fully briefed and argued orally, and in the end, for the reasons stated from the Bench at a May 27, 2009, hearing, defendant's motion was denied.[3] This Order reflects that ruling and further explains the reasons stated from the Bench.

## I.

On June 4, 2007, a federal grand jury sitting in the Eastern District of Virginia indicted defendant, then a sitting congressman, for a variety of crimes including conspiracy, bribery, wire fraud, foreign corrupt practices, money laundering, obstruction of justice, and racketeering. Pertinent here are the bribery allegations, namely that beginning in or about January 2001, defendant used his office and status as a Member of the U.S. House of Representatives to advance the business interests of various individuals and corporations in return for things of value. More specifically, the Indictment's bribery-related counts allege that defendant conspired to solicit or solicited money and other things of value in exchange for being influenced in the performance of various "official acts," all in violation of 18 U.S.C. § 201(b)(2)(A). The alleged "official acts"

generally involved defendant's efforts—through a pattern of meetings, correspondence, and overseas travel—to obtain financial and other business development assistance from U.S. and foreign government officials and entities on behalf of those who made or promised payments to defendant.

On February 12, 2009, the government filed a notice of expert testimony explaining Mr. McHugh's service from 1975 to 1993 as a U.S. House Representative for New York and setting forth his anticipated expert testimony concerning the following areas relevant to the Indictment's bribery allegations:

(i) "a general description of the activities of a Member of the U.S. House of Representatives and its various Caucuses and Committees ('Member')";

(ii) "his opinion that constituent services are routinely performed by Members and that settled practice dictates that constituent services are matters ... routinely brought before Members in their official capacity";

(iii) "his opinion that the types of official acts alleged ..., including [those alleged by] paragraphs 49 and 149 of the Indictment, are among the constituent services [i] that are routinely performed by Members and [ii] that settled practice dictates are matters ... routinely brought before Members in their official capacity"; and

(iv) his opinion "that membership in certain congressional committees and caucuses, such as the House Ways

---

F.3d 300 (4th Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 2383, 173 L.Ed.2d 1294 (2009).

**3.** Although defendant's motion was denied, defense counsel was granted leave to renew

his objections at trial should Mr. McHugh's testimony exceed the bounds of the forecasted testimony held admissible here.

and Means Committee, its subcommittees, and various other committees and caucuses provides the Member with influence and access to various foreign government agencies and U.S. government agencies, including, but not limited to, the U.S. Department of State, U.S. Embassies and Consulates, the U.S. Army, the Export–Import Bank of the United States, and the United States Trade Development Agency." Gov't Notice of Substitution Related to Expert Testimony (Docket No. 299), at 2.

On February 23, 2009, defendant moved to exclude Mr. McHugh's testimony on two grounds. First, defendant contends that Mr. McHugh's forecasted testimony includes impermissible legal conclusions that will not be helpful to the jury and are thus inadmissible under Rules 702, 402, and 403. More specifically, defendant objects to Mr. McHugh's proposed use of the words and phrases "routinely performed," "settled practice," "matters," "decisions," and "routinely brought before Members in their official capacity" because those words and phrases track the language and principles of the bribery statute. Second, defendant contends that Mr. McHugh's proposed testimony with respect to the influence derived by defendant's congressional committee and caucus memberships is barred by the Speech or Debate Clause because it relies on and requires inferences based on defendant's protected legislative acts.

In response, the government first points out that it does not intend to ask Mr. McHugh to give an expert opinion regarding whether any of defendant's alleged acts constituted "official acts." [4] Although the government acknowledges that Mr. McHugh may use some words and phrases similar to the language and principles of the bribery statute, the government contends that use of such words and phrases does not render Mr. McHugh's opinions inadmissible, as those words and phrases are within the limited vernacular available to express a helpful expert opinion explaining congressional members' customary activities and settled practices. With respect to defendant's Speech or Debate Clause objection, the government argues that the Speech or Debate Clause does not bar Mr. McHugh's proposed testimony because Mr. McHugh will not rely on any evidence of defendant's legislative acts, nor will the government ask the jury to infer any knowledge by defendant gained from particular legislative acts. Instead, the government contends that Mr. McHugh's testimony regarding committee and caucus memberships will be offered as evidence of defendant's status to demonstrate why those who allegedly paid bribes to defendant sought his influence.

## II.

■ The analysis with respect to defendant's Rule 702, 402, and 403 objections must begin with Rule 702's text, which provides, in pertinent part, that where "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise[.]" Importantly, Rule 702 must be read in conjunction with Rule 704(a), Fed.R.Evid., which provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." In this respect, "Rule 704(a) was designed specifically to abolish

---

4. Indeed, the government concedes that such testimony "[c]learly ... would call for an improper legal conclusion[.]" Gov't Mem. in Opp'n (Docket No. 334), at 7.

the 'ultimate issue' rule" which, at common law, barred such opinions. *United States v. Barile,* 286 F.3d 749, 759 (4th Cir.2002) (citation omitted). But Rule 704(a) "does not lower the bar[ ] so as to admit all opinions"; rather, as Rule 704's advisory committee notes make clear,

> [u]nder Rule[ ] ... 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.

■ Rule 704, Fed.R.Evid., advisory committee notes, *quoted in Barile,* 286 F.3d at 759–60. Thus, the Fourth Circuit has held that "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver,* 470 F.3d 550, 562 (4th Cir.2006) (citation omitted). Yet, mere usage of words and phrases that "track[ ] the language of the legal principle at issue or of the applicable statute" is insufficient to render an expert's testimony inadmissible. *Barile,* 286 F.3d at 760. Rather, the Fourth Circuit "indentif[ies] improper legal conclusions by determining whether 'the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" *McIver,* 470 F.3d at 562 (quoting *Barile,* 286 F.3d at 760).[5] And in such an inquiry, "[t]he touchstone of admissibility ... is helpfulness to the jury." *United States v. Perkins,* 470 F.3d 150, 157 (4th Cir.2006) (citations omitted).

■ These principles, applied here, compel the conclusion that Mr. McHugh's forecasted expert opinions neither constitute, nor include, impermissible legal conclusions. Specifically, it appears at this stage that Mr. McHugh's proposed testimony, which will be based on his specialized knowledge as a former congressman, will assist the jury to understand the evidence and determine the facts in issue in this case without merely telling the jury what result to reach. In this respect, it is clear that Mr. McHugh's proposed testimony that certain activities are "routinely performed" by congressmen neither tracks the language of the applicable statute, nor arguably states a legal conclusion. Further, although words such as "decision" or "matter" are also used in the bribery statute's definition of "official act,"[6] those words are within the limited vernacular available to express the issues in this case, and those words' legal meanings are not so distinct as to render Mr. McHugh's proposed testimony unhelpful to the jury. Similarly, Mr. McHugh's proposed use of the phrases "settled practice" and "routinely brought before Members in their official capacity" does not render his testi-

---

5. For example, Rule 704's advisory committee notes provide the following example:

> [T]he question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

*See also Barile,* 286 F.3d at 761 (quoting the advisory committee note example).

6. Specifically, "official act" is defined by the bribery statute as

> any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

18 U.S.C. § 201(a)(3).

mony inadmissible. To be sure, the phrase "brought before Members in their official capacity" tracks language used in the definition of "official act," and "settled practice" is a phrase that courts have frequently used to elucidate the principle that acts taken as part of a public official's customary activities may fall within the statutory definition of "official act." [7] Yet, neither phrase contains such a "separate, distinct and specialized meaning in the law different from that present in the vernacular" so as to render Mr. McHugh's proposed testimony unhelpful to the jury. *Barile*, 286 F.3d at 760 (quotation omitted). In summary, Mr. McHugh's forecasted testimony is (i) plainly relevant, indeed centrally so; (ii) certainly helpful to the jury without running afoul of Rule 704's advisory committee notes; and (iii) not unfairly prejudicial in any way. Accordingly, defendant's objections must be rejected.

The result reached here is consistent with the result in *McIver*, where the Fourth Circuit upheld the admission of expert medical testimony that a particular doctor's conduct was "illegitimate," "inappropriate," and "way outside the course of legitimate medical treatment," 470 F.3d at 562, 556. In so holding, the Fourth Circuit explained that "[a]lthough [the doctor] used terms similar to that which this court has employed to express the underlying issue," those terms fell "within the limited vernacular that is available to express whether a doctor acted outside the bounds of his professional practice." *Id.* at 562. Similarly, the words and phrases at issue in Mr. McHugh's proposed testimony are within the limited vernacular available to express whether a congressman acted within the bounds of a congressman's settled practices and customary activities, which is a relevant factual predicate for the "official act" element.[8] In addition, in *McIver* the Fourth Circuit cited several examples from other circuits of inadmissible legal conclusions that are instructive here, namely that "a defendant's actions constituted 'extortion,' . . . that a dog bite constituted 'deadly force,' . . . that defendants held a 'fiduciary' relationship to plaintiffs, . . . and that a product was 'unreasonably dangerous[.]'" *Id.* (citations omitted). Put succinctly, these examples demonstrate that the similarly inadmissible opinion in this case would be an opinion that an act constitutes an "official act," not use of the words and phrases to which defendant objects here.[9]

7. *See Jefferson*, —— F.Supp.2d at ——, 2009 WL 1491323, at \*6 (observing that the phrases "question, matter, cause, suit, proceeding or controversy" and "which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit" are "intended to describe those activities that have been 'clearly established by settled practice' as part of a public official's position" (quoting *United States v. Birdsall*, 233 U.S. 223, 231, 34 S.Ct. 512, 58 L.Ed. 930 (1914))); *see also United States v. Biaggi*, 853 F.2d 89, 96–99 (2d Cir.1988) (applying the *Birdsall* "settled practice" principle); *United States v. Carson*, 464 F.2d 424, 431–34 (2d Cir.1972) (same).

8. *See Jefferson*, —— F.Supp.2d at ——, 2009 WL 1491323, at \*7("[R]elevant expert testimony might include . . . testimony by a former congressman that a congressman's customary use of his office, as clearly established by settled practice, includes exertion of influence on U.S. and foreign government officials on behalf of individuals seeking to advance business interests in the United States and abroad." (citations omitted)).

9. *See also Barile*, 286 F.3d at 760–61 ("In many circumstances, a problematic question can be more carefully phrased to elicit similar information yet avoid a response that constitutes a mere legal conclusion." (citing *Torres v. County of Oakland*, 758 F.2d 147, 151 (6thCir.1985) (observing in Title VII context that although opinion that certain conduct

## III.

■ Next, defendant's Speech or Debate Clause objection to Mr. McHugh's proposed testimony is, in essence, a variation on a similar Speech or Debate Clause argument that has already been considered and rejected in this case. *See United States v. Jefferson*, 534 F.Supp.2d 645, 650–55 (E.D.Va.), *aff'd*, 546 F.3d 300, 310–312 (4th Cir.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 2383, 173 L.Ed.2d 1294 (2009). In this regard, defendant argues here that Mr. McHugh's testimony will violate the Speech or Debate Clause because his proposed opinions rely on, and will urge inferences by the jury based on, defendant's protected legislative acts. This argument is essentially the same as defendant's previously rejected argument in support of his motion to dismiss the Indictment's charges on Speech or Debate Clause grounds, namely that submission to the grand jury of materials "contain[ing] references to defendant's status as a congressman and as a member of various congressional committees" mandates dismissal of the Indictment. *Jefferson*, 534 F.Supp.2d at 652. This prior argument was rejected based on "[s]ettled authority" equally applicable to defendant's present argument, namely, *United States v. McDade*, 28 F.3d 283 (3d Cir.1994), in which "Justice Alito—then Judge Alito— wrote that 'the Speech or Debate Clause does not require dismissal of any count of [an] indictment simply because it refers to [a] defendant's status as a member or ranking member of [a] congressional committee[ ].'" *Jefferson*, 534 F.Supp.2d at 652 (quoting *McDade*, 28 F.3d at 291). Based on this passage in *McDade*, defendant's prior motion was denied, as "mere reference ... to defendant's status ... does not offend the Speech or Debate Clause provided, of course, that neither the [I]ndictment *nor the prosecution* entails inquiry into defendant's *participation in the consideration and passage of legislation*" *Id.* (emphasis added). Similarly, defendant's Speech or Debate Clause objection here must be rejected, as the government's anticipated examination of Mr. McHugh will not inquire into defendant's participation in the consideration and passage of legislation.[10] Thus, so long as Mr. McHugh's testimony is not used for the purpose of inferring that defendant, through his committee and caucus memberships, derived particular knowledge from particular legislative acts, the Speech or Debate Clause is not offended. Accordingly, both generalized testimony as to the influence derived

---

constituted "discrimination" was unhelpful to jury, opinion that national origin "motivated" certain treatment would be admissible))).

10. In opposition to this point, defendant relies, as he did in his motion to dismiss the Indictment on Speech or Debate Clause grounds, on *United States v. Swindall*, 971 F.2d 1531 (11th Cir.1992). In *Swindall*, the Eleventh Circuit held that a prosecutor's arguments that a defendant congressman had knowledge of certain bills based on that congressman's particular committee membership violated the Speech or Debate Clause. But as then-Judge Alito pointed out in *McDade*, the opinion in *Swindall* does not suggest a categorical bar to proof of a congressman's committee memberships; rather, *Swindall* stands for the proposition that the Speech or Debate Clause is violated where "prosecutors ... inquire into a member's committee status *for the purpose of showing that the member had acquired knowledge of the contents of the bills considered by his or her committees.*" *McDade*, 28 F.3d at 293 (emphasis in original), *cited in United States v. Rostenkowski*, 59 F.3d 1291, 1303 (D.C.Cir.1995) ("[P]roof of a congressman's status as a member of a particular committee does not violate the Speech [or] Debate Clause."). It is clear, based on the government's notice and the government's arguments in its brief and at oral argument, that the government is not offering Mr. McHugh's testimony for that prohibited purpose. Accordingly, defendant's reliance on *Swindall* is, as it was before, misplaced.

by (and thought by others to be derived by) certain committee and caucus memberships,[11] as well as evidence that defendant gained knowledge through nonlegislative acts taken as a member of those committees and caucuses,[12] is permissible.[13]

## IV.

In summary, Mr. McHugh's forecasted testimony is admissible under Rules 702, 402, and 403, inasmuch as Mr. McHugh's anticipated testimony and opinions are not mere legal conclusions, but rather consist of matters helpful to the jury and phrased in the limited vernacular available to explain certain factual predicates pertinent to an important disputed issue in this case, namely whether defendant engaged in "official acts" in return for bribes. It is also clear that neither Mr. McHugh's forecasted testimony, nor the government's forecasted arguments based on that testimony, violate the Speech or Debate Clause.

Accordingly, for the reasons stated from the Bench and elucidated herein, and for good cause,

It is hereby **ORDERED** that defendant's motion to exclude the proposed testimony of Mr. Matthew F. McHugh is **DENIED.**

The Clerk is directed to send a copy of this Order to all counsel of record.

---

11. Indeed, defendant's argument that the Speech or Debate Clause bars such relevant motive evidence has already been rejected. *See Jefferson,* 534 F.Supp.2d at 653 (observing that Speech or Debate Clause is also not offended by evidence that "simply relates to defendant's influence and status, [*i.e.,*] matters only incidentally related to defendant's past legislative activities that may be relevant to the motivation some persons might have to bribe defendant"). The Fourth Circuit acknowledged as much when it observed, in rejecting defendant's interlocutory Speech or Debate Clause appeal, that "the Supreme Court [has] carefully surveyed the contours of the Speech or Debate Clause[ ][and] conclud[ed] that the Clause does not prevent the prosecution from introducing, in a bribery proceeding, relevant evidence of a legislator's status." *Jefferson,* 546 F.3d at 310 (citing *United States v. Brewster,* 408 U.S. 501, 512, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972)). *See also McDade,* 28 F.3d at 293 (observing that the Speech or Debate Clause is not offended

where a congressman's committee memberships are used "not to show that he actually performed any legislative acts, but to show that he was thought by those offering him bribes and illegal gratuities to have performed such acts and to have the capacity to perform other similar acts").

12. *See, e.g., Jefferson,* 546 F.3d at 311 ("It is thus apparent that nonlegislative acts, such as making appointments with agencies, assisting constituents in securing government contracts, preparing newsletters or news releases, or making speeches outside Congress, are within the scope of an appropriate inquiry." (citing *Brewster,* 408 U.S. at 515–16, 92 S.Ct. 2531)).

13. Of course, it is important to remember that the Speech or Debate Clause does not prohibit defendant from "choos[ing] to offer rebuttal evidence of legislative acts" that would otherwise be barred from the government's case-in-chief. *McDade,* 28 F.3d at 294.